**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

July 12, 2016

Auto Owners Insurance Company
800 S. Gay St., Ste. 2021, % C T Corp.
Knoxville, TN 37929-9710
NAIC # 18988

Certified Mail
Return Receipt Requested
7015 0640 0007 0044 4121
Cashier # 26751

Re:   Viola Shipp  V.  Auto Owners Insurance Company

Docket # 16C1568

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served July 11, 2016, on your behalf in connection with the
above-styled proceeding. Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
Davidson County
1 Public Square, Room 302
Nashville, Tn 37219-6303



# STATE OF TENNESSEE
## DAVIDSON COUNTY
### 20TH JUDICIAL DISTRICT

[X] First
[ ] Alias
[ ] Pluries

VIOLA SHIPP,

_____

_____

_____ Plaintiff

CIVIL ACTION
DOCKET NO. 16C1568

Vs.

AUTO-OWNERS INSURANCE COMPANY,

_____

_____

_____

_____ Defendant

**Method of Service:**

[ ] Davidson County Sheriff

[ ] Out of County Sheriff

[ ] Secretary of State

[ ] Certified Mail

[ ] Personal Service

[X] Commissioner of Insurance

**To the above named Defendant:**

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: 6-30-16

RICHARD R. ROOKER
Circuit Court Clerk
Davidson County, Tennessee

By: _____
Deputy Clerk

| ATTORNEY FOR PLAINTIFF or PLAINTIFF'S ADDRESS | Thomas W. Thompson, Esq. , Smith, Kling & Thompson, P.A. |
|---|---|
| | 4725 N. Lois Avenue |
| | Address |
| | Tampa, FL 33614 |

**TO THE SHERIFF:**

Please execute this summons and make your return hereon as provided by law.

RICHARD R. ROOKER
Circuit Court Clerk

Received this summons for service this _____ day of _____, 20____

_____
SHERIFF

To request an ADA accommodation, please contact Dart Gore at (615) 880-3309.

Case 3:16-cv-01967    Document 1-2    Filed 07/28/16    Page 2 of 78 PageID #: 6

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of _____, 20_____, I:

[ ] served this summons and complaint/petition on _____

_____ in the following manner:

_____

[ ] failed to serve this summons within 90 days after its issuance because _____

_____

Sheriff/Process Server

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _____ day of _____ 20_____ I sent, postage prepaid by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in Docket No.

_____ to the defendant, _____. On the _____ day of _____, I received the return receipt for said registered or certified mail, which had been signed by _____ 20_____ on the _____ day of _____, 20_____. Said return receipt is attached to this original summons and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS

_____ DAY OF _____, 20_____

_____
NOTARY PUBLIC or _____ DEPUTY CLERK

MY COMMISSION EXPIRES: _____

PLAINTIFF, PLAINTIFF'S ATTORNEY OR OTHER PERSON
AUTHORIZED BY STATUTE TO SERVE PROCESS

## NOTICE

### TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

ATTACH

RETURN

RECEIPT

HERE

(IF APPLICABLE)

STATE OF TENNESSEE
COUNTY OF DAVIDSON

I, Richard R. Rooker, Clerk of the Circuit Court in the State and County aforesaid, do hereby certify this to be a true and correct copy of the original summons issued in this case.

RICHARD R. ROOKER, CLERK

(To be completed only if
copy certification required.)

By: _____ D.C.

IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

FILED

2016 JUN -9 AM 10: 16

RICHARD R. ROOKER, CLERK

| | | |
|---|---|---|
| VIOLA SHIPP, | ) | JURY DEMAND |
| | ) | |
| Plaintiff, | ) | Case No. _____ D.C. |
| | ) | |
| v. | ) | |
| | ) | |
| AUTO-OWNERS INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **VIOLA SHIPP**, for her Complaint against the Defendant, **AUTO-OWNERS INSURANCE COMPANY** ("Defendant"), would respectfully show and allege to the Court as follows:

### PARTIES AND JURISDICTION

1.    Plaintiff, VIOLA SHIPP, own and reside at the property located at 4901 Peppertree Dr., Antioch, TN 37013.

2.    Defendant, AUTO-OWNERS INSURANCE COMPANY, is a for-profit foreign insurance company authorized to engage in, and does engage in, the sale and delivery of property insurance within the State of Tennessee. The registered agent for service of process of AUTO-OWNERS INSURANCE COMPANY is the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee, 37243.

3.    Plaintiff's claim for relief arises from a covered loss to their property located at 4901 Peppertree Dr., Antioch, TN 37013 (the "Property"). Venue is proper pursuant to Tenn. Code Ann. § 20-4-103.

1

## FACTS

4. At all times material hereto, Plaintiff have been the owner of the Property.

5. Plaintiff renewed or procured a policy of homeowners' insurance, policy number HP5370280 ("Policy"), from Defendant covering the above-referenced property. A copy of the Policy has been provided by Defendant.

6. In consideration of monies paid by Plaintiff to Defendant, the "all-risk" Policy was issued, insuring the Plaintiff's property against all risks which are not excluded, including sinkholes. The insurance policy provided dwelling insurance coverage, in addition to other coverages.

7. Plaintiff has renewed the Policy each and every year and have paid all premiums due thereunder and otherwise met all conditions of coverage thereunder.

8. On or about June 2, 2015, while the Policy was in full force and effect, the dwelling located on the Property was damaged by a covered peril.

9. A notice of loss and damages was properly and promptly given by Plaintiff to Defendant in accordance with the terms of the Policy.

10. Plaintiff has fulfilled all of the duties after the Loss that were imposed upon them by the Policy.

11. Without consulting Plaintiff in its choice of engineer, Defendant sent Rimkus Consulting Group., Inc. ("Rimkus") to Plaintiff's Property who denied the damage to the Property was caused by sinkhole activity.

12. Given concerns with the propriety of Rimkus' testing and report, as adopted by Defendant, Plaintiff retained the services of Plaintiff's own geotechnical engineering firm to conduct a review of this matter.

2

13.     Upon information and belief, the geotechnical engineering firm retained by Defendant, Rimkus, failed to comply with standard geotechnical engineering practices and procedures in completing its inspection, testing, and evaluation of the damages to Plaintiff's Property.

14.     Defendant has taken the position that the damage to the Property consistent with sinkhole activity was not caused in fact by sinkhole activity on the Property.

15.     On or about October 20, 2015, Defendant sent correspondence denying Plaintiff's claim based on the Rimkus report.

16.     On or about February 3, 2016, Plaintiff, through counsel, sent a Formal Demand to Defendant requesting that Defendant reconsider all of the evidence and the claim be paid in full amount.

17.     Plaintiff has complied fully with all of the provisions of the Policy, but Defendant has declined or refused to make payment to Plaintiff for the loss and damage sustained. Defendant's refusal to promptly and fully pay Plaintiff the amounts owed as a result of the Loss is without justification.

18.     Defendant's refusal to pay the money and benefits due and owing Plaintiff under the Policy has caused Plaintiff to seek legal counsel and pay them a reasonable fee for their services, and to initiate this Complaint to recover the insurance proceeds and/or other Policy benefits to which they are entitled.

## BREACH OF CONTRACT

19.     Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 18 above as though fully set forth herein.

3

20.    The Policy issued by Defendant to Plaintiff is a binding contract, and is supported by valid consideration.

21.    Defendant is in total material breach of the Policy, and Defendant is liable to Plaintiff in the maximum amount allowed by the Policy for the covered damage caused to the Property. Specifically, Defendant's breach of contract includes its failure and refusal to pay all amounts owed to Plaintiff for the damage to the Property and its failure and refusal to pay all amounts owed to Plaintiff for all benefits due under the Policy. Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim.

22.    As a result of Defendant's breach of contract, Plaintiff has sustained substantial compensable losses for the amounts claimed under the Policy. Defendant owes Plaintiff prejudgment interest, expert fees, costs, the costs of all structurally necessary repairs, and, if the home is not repairable within applicable coverage limits, an amount equal to such limits for the total constructive loss.

23.    Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange*, 2013 Tenn. App. LEXIS 712, *47 (Tenn. Ct. App. Oct. 31, 2013). Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to properly investigate the Property as required under the Policy and state statute; (2) failed to effectuate a prompt and fair settlement of Plaintiff's claim when liability was clear; (3) unjustly refused and/or failed to pay Plaintiff's claim for its own financial preservation with no reasonable or justifiable basis; (4) failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim; (5) failed to

4

investigate the Plaintiff's claim in a prompt and thorough manner; (6) represented to its insured that exclusionary language contained in the Policy excluded coverage of the claim, when the Defendant knew or should have known that it did not exclude coverage and (7) engaged in such acts as are set forth in paragraphs 26 and 27 below. Plaintiff seeks, and is entitled to, punitive damages.

## BAD FAITH

24. Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 23 above as though fully set forth herein.

25. Defendant's failure and refusal to pay the amounts owed to Plaintiff is arbitrary and capricious and is not in good faith, and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than sixty (60) days have passed since a formal demand has been made on Defendant and full payment has not been made for Plaintiff's covered loss as required by the Policy, for which the twenty-five percent (25%) statutory penalty for bad faith should be invoked. Defendant's bad faith failure to pay has inflicted expense, loss, and injury upon Plaintiff. Accordingly, Plaintiff is entitled to recover, in addition to the amount of the insured loss and interest thereon, an amount equal to twenty-five percent (25%) of the liability for the loss, pursuant to Tenn. Code Ann. § 56-7-105.

26. The bad faith of Defendant is evidenced by the fact that, at all times hereto, Defendant knew, or reasonably should have known, that Plaintiff was justifiably relying on the money and benefits due them under the terms of the Policy and as otherwise promised and represented by Defendant, as well as the actions of Defendant as set forth more fully below. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff,

5

Defendant consciously refused to fully pay Plaintiff's valid claim and withheld monies and benefits rightfully due Plaintiff. The acts and/or omissions of Defendant constitute bad faith with respect to the exercise of its duties and obligations to the Plaintiff, including, but not limited to:

(A)     Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of insurance claims;

(B)     Defendant failed to investigate the Plaintiff's claims in a prompt and thorough manner;

(C)     Defendant intentionally ignored requests to pay the claim of insurance policy coverage for the Plaintiff's claims;

(D)     Defendant's intentional failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim;

(E)     Defendant's intentional refusal to pay Plaintiff's claim and to otherwise honor its obligations under the Policy without conducting a reasonable investigation based on all available information;

(F)     Defendant's intentional refusal to fully investigate Plaintiff's claim and to obtain all available information before denying the claim and alleging it has no further obligations to Plaintiff;

(G)     Defendant's engaging in acts and practices toward Plaintiff that amount to acts of baseness, vileness, and/or depravity that are contrary to the good faith duties owed to Plaintiff;

(H)     Defendant's intentional failure to pay all amounts due and owing under the Policy with no reasonable or justifiable basis; and

(I)     Defendant's use of biased and unqualified "experts" to avoid its contractual obligations to Plaintiff.

27.     Defendant's bad faith is further evidenced by the all of the facts and allegations set forth in this Complaint, together with the following non-exclusive facts:

-   Defendant failed to advise Plaintiff that it regularly hires Rimkus to conduct outcome-oriented investigations on homeowners' properties.

6

- Defendant's engineer, Rimkus, failed to perform a subsidence investigation adequate to eliminate the existence of sinkhole activity within a reasonable degree of professional probability.

- Defendant regularly hires the same outcome-oriented engineers in order to achieve its desired "engineering" outcome.

28. In so acting, Defendant intended to and did injure Plaintiff in order to protect its own financial interests, and should be punished via the twenty-five percent (25%) statutory bad faith penalty.

29. Although Defendant is aware of Rimkus' flawed findings, Defendant blindly adopted Rimkus' inappropriate recommendation to the Property in an intentional placement of its own financial interests before Plaintiff's interest in safeguarding their home.

30. As discovery and depositions progress, Plaintiff anticipates additional bad faith acts and/or omissions will come to light.

31. It is worth noting that recently in *Am. Nat'l Prop. & Cas. Co v. Stutte*, the Court found that the insurer had a "good faith duty to consider evidence that came to light over the course of this litigation, and if that evidence made clear that the [Plaintiffs] did not destroy their home and that they were due losses under the policy, it should have paid their claims." 2015 U.S. Dist. LEXIS 55280, *6 (E.D. Tenn. Apr. 28, 2015). As a result, the court stated that if the insurer breached its obligations when it denied coverage originally, and "it has continued to deny coverage and/or refuse to settle the [Plaintiffs'] claim, then the 'failure to pay' continues, and the failure remains subject to the bad faith penalty." *Id.* at *10. Here, the Defendant has denied—and has continued to deny—Plaintiff's claim, therefore the "failure to pay" continues and Defendant remains vulnerable to a bad faith penalty.

32. Defendant has exhibited a pattern of conduct with regard to its claims handling practices, which has resulted in repeated misconduct amounting to intentional or reckless bad

7

faith toward its insureds. A history of court determinations and complaints of bad faith conduct on the part of Defendant has put Defendant on notice that its claims handling practices have resulted in repeated incidents of bad faith. In spite of such notice, Defendant has intentionally or recklessly or carelessly failed to correct its corporate policies or otherwise train its personnel in such a manner as to reduce or eliminate this misconduct.

WHEREFORE, as a result of the foregoing, Plaintiff would respectfully request that this Honorable Court award a judgment to Plaintiff as follows:

A.  For compensatory damages against Defendant not to exceed $142,500.00;

B.  For the statutory bad faith penalty not to exceed 25% of Plaintiff's claim under the Policy;

C.  For all costs incurred by Plaintiff as a result of this action;

D.  For pre- and post-judgment interest; and

E.  For such other further and general relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury of twelve (12) persons to try all issues so triable in this matter and such further and general relief to which he may be entitled.

Respectfully submitted,

By: Thomas W. Thompson

**Smith, Kling & Thompson, P.A.**
Thomas W. Thompson, Esquire
thompson@ttglaw.com
BPR: 030659
4725 North Lois Avenue
Tampa, Florida 33614-7046
Telephone:     (813) 254-1800
Facsimile:     (813) 254-1844
Attorney for Plaintiff

8

# *Auto-Owners*

FILED

2016 JUN -9 AM 10: 17

RICHARD R. ROOKER, CLERK

D.C

Page 1

**(MUTUAL) INSURANCE COMPANY**
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

17560 (01-14)
Issued 09-10-2014
Policyholder since 2005

**HOMEOWNERS POLICY DECLARATIONS**

AGENCY AL BARDAYAN AGENCY INC
19-0026-00      Mkt Terr 104      (615) 832-2388

Endorsement Effective      08-30-2014

INSURED VIOLA SHIPP

**POLICY NUMBER**      46-492-884-00
Company Use      03-89-TN-0508

ADDRESS 4901 PEPPERTREE DR

ANTIOCH  TN  37013-1649

| Company Bill | POLICY TERM | |
|---|---|---|
| | 12:01 a.m. | 12:01 a.m. |
| | 08-30-2014 to | 08-30-2015 |

This policy is amended in consideration of the additional or return premium shown below. This Declarations voids and replaces all previously issued Declarations bearing the same policy number and premium term.

| | TERM | |
|---|---|---|
| TOTAL POLICY PREMIUM | $1,269.44 | |
| | | No Charge |

THE LOCATIONS DESCRIBED HEREIN ARE COVERED BY THIS POLICY FORM

4901 Peppertree Dr  Antioch, TN 37013-1649

Frame Construction Built in 1993
Asphalt Roof Updated in 2009
Protection Class 4
Wind or hail losses to your roof will be paid on a Replacement Cost basis.

| PROPERTY AND LIABILITY COVERAGES | LIMITS |
|---|---|
| A Dwelling | $142,500 |
| B Other Structures | 14,250 |
| C Personal Property | 99,750 |
| D Additional Living Expense and Loss of Rents | 28,500 |
| E Personal Liability (each occurrence) | 100,000 |
| F Medical Payments (each person) | 1,000 |

Section I Deductible
$1,000 - All Peril Deductible

**COVERAGES THAT APPLY**

| | |
|---|---|
| Personal Property Replacement Cost | |
| Guaranteed Home Replacement Cost | |
| Credit and Fund Transfer Card Coverage | $1,000 |
| Sinkhole Coverage | |
| Ordinance Or Law Coverage | 14,250 |
| Property Coverage Limitation for Fungi, Wet Rot, Dry Rot and Bacteria resulting from a covered cause of loss | 14,250 |
| Loss Assessment Coverage | 2,500 |
| Fire Department Charges | 500 |

**PREMIUM DISCOUNTS THAT APPLY**
Protective Devices Discount
Claim Free Discount

| | | CHANGE |
|---|---|---|
| TOTAL LOCATION PREMIUM | $1,269.44 | |

Forms That Apply To This Location:
17903 (02-96)   57482 (08-13)   17709 (02-96)   57006 (03-07)   57444 (01-12)   17618 (02-96)   17662 (02-08)
57012 (06-14)   17555 (07-01)   17594 (11-13)

Secured Interested Parties: See Schedule

| | TERM | |
|---|---|---|
| TOTAL POLICY PREMIUM | $1,269.44 | |
| | | No Charge |

Insurance Score: X725

I certify that this policy was assembled from available records as a representation of coverage that was in effect for the policy period shown.

Scott Keller

Date : 10-1-15

AUTO-OWNERS (MUTUAL) INS. CO.

17560 (01-14)
Issued 09-10-2014

AGENCY AL BARDAYAN AGENCY INC
19-0026-00          Mkt Terr 104

Company Bill

POLICY NUMBER          46-492-884-00
Company Use          03-89-TN-0508

INSURED VIOLA SHIPP

Term 08-30-2014 to 08-30-2015

Forms That Apply To All Locations:
57023 (02-07)    17380 (01-04)    17761 (06-05)    17447 (03-97)

SECURED INTERESTED PARTIES AND/OR ADDITIONAL INTERESTED PARTIES

**Loc 001**
REGIONS BANK DBA REGIONS MORTGAGE          Loan: 3004084285
ISAOA
PO BOX 200401
FLORENCE SC 29502-0401
Interest: Mortgagee EOB
SIP-ID: SC084399

# Homeowners Insurance Policy

*Auto-Owners (Mutual) Insurance Company*

**POLICY NON-ASSESSABLE**

This policy is non-assessable and the premium stated in the Declarations is the only premium you will be asked to pay.

**PARTICIPATING**

You will be entitled to an equitable participation in Company funds in excess of the amount required to pay expenses and all the losses or claims or other policy obligations incurred, together with the reserve and surplus funds required or permitted by law. A distribution will be made only in accordance with the decision of our Board of Directors acting under the insurance laws and under our charter.

**NOTICE OF MEMBERSHIP AND ANNUAL MEETING**

Because we are a mutual company this policy makes you a member of the Auto-Owners (Mutual) Insurance Company. You are entitled to vote, in person or by proxy, at all meetings. Our annual policyholder's meetings are held at our home office at Lansing, Michigan on the second Monday in May in each year at 10:00 A.M.

In witness whereof, we, the Auto-Owners (Mutual) Insurance Company, have caused this policy to be issued and to be duly signed by our President and Secretary.

Secretary                                        President

17430 (7-12)

# HOMEOWNERS POLICY
## FORM 3

This policy is a legal contract between you and us.

**READ YOUR POLICY CAREFULLY.** This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. **IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.**

The DECLARATIONS contain:

Your name
Location of the residence premises
Policy Term
Coverages
Limits of Insurance
Deductible (Amounts)

| You Will Find | On Page |
|---|---|
| INSURING AGREEMENT | 1 |
| DEFINITIONS | 1 |
| SECTION I - PROPERTY PROTECTION | 3 |
| COVERAGES | 3 |
| PERILS WE INSURE AGAINST | 6 |
| EXCLUSIONS | 9 |
| ADDITIONAL COVERAGES | 9 |
| DEDUCTIBLE | 12 |
| CONDITIONS | 12 |
| SECTION II - PERSONAL LIABILITY PROTECTION | 15 |
| COVERAGES | 15 |
| EXCLUSIONS | 16 |
| ADDITIONAL COVERAGES | 18 |
| LIMIT OF INSURANCE | 19 |
| CONDITIONS | 20 |
| WHAT TO DO IN CASE OF LOSS | 20 |
| PROPERTY | 20 |
| PERSONAL LIABILITY PROTECTION | 21 |
| MEDICAL PAYMENTS | 21 |
| GENERAL POLICY CONDITIONS | 22 |
| ASSIGNMENTS | 22 |
| CONCEALMENT OR FRAUD | 22 |
| CHANGES | 22 |
| INSPECTIONS | 22 |
| OUR RIGHT TO RECOVER PAYMENT | 22 |
| RECOVERIES | 22 |

# HOMEOWNERS POLICY
# FORM 3
# INSURING AGREEMENT

The attached Declarations describe the property we insure and the Coverages and Limits of Insurance for which you have paid a premium. In reliance upon your statements in the Declarations and application(s), we agree to provide insurance subject to all terms and conditions of this policy. In return, you must pay the premium and comply with all the terms and conditions of this policy. This policy applies to losses, **bodily injury**, **property damage** and **personal injury** which occur during the policy term shown in the Declarations.

## DEFINITIONS

To understand this policy, **you** must understand the meaning of the following words. These words appear in **bold face type** whenever used in this policy and endorsements attached to this policy.

1. **Aircraft** means a conveyance designed or used for flight including self-propelled missiles and spacecraft.

2. **Bodily injury** means physical injury, sickness or disease sustained by a person including resulting death of that person. **Bodily injury** does not include **personal injury**.

3. **Business** means:

   a. any full or part time trade, profession or occupation;

   b. home day care services provided by an **insured**; and

   c. rental or holding out for rental to others of any premises by any **insured**.

   **Business** does not include:

   a. home day care services:

      (1) any **insured** provides on an infrequent and irregular basis;

      (2) provided part time by a **relative** who is under 21 years of age;

      (3) provided to a **relative** by any **insured**; nor

      (4) provided on a mutual exchange basis;

   b. occasional rental or holding out for occasional rental to others of the **residence premises** for use as a dwelling;

   c. rental or holding out for rental to others a part of the **residence premises** for use as a dwelling, provided the rental is to no more than two roomers or boarders in any single family unit; nor

   d. rental or holding out for rental to others a part of the **residence premises** as a private garage, office, school or studio.

4. **Incident** means an offense(s) committed by any **insured** resulting in **personal injury** and includes, as one **incident**, all continuous or repeated exposure to substantially the same generally harmful condition.

5. **Insured** means:

   a. **you**;

   b. **your** **relatives**; and

   c. any other person under the age of 21 residing with **you** who is in **your** care or the care of a **relative**.

   In SECTION II - PERSONAL LIABILITY PROTECTION, **insured** also means:

   d. with respect to any vehicle covered by this policy:
      (1) any employee of a person in a., b. or c. above, while engaged in the employment of that person; or

      (2) any other person **you** permit to use the vehicle while on an **insured premises**.

   e. any person or organization legally responsible for animals or watercraft covered by this policy and owned by a person in a., b. or c. above. However, we will cover that person or organization only with respect to those animals or

17903 (2-96)

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 17 of 78 PageID #: 21

watercraft. We will not cover any person nor organization using or having custody of animals or watercraft in the course of any business nor without permission of the owner.

6. **Insured premises means:**

   a. the residence premises;

   b. any structures or grounds you use in connection with your residence premises;

   c. any other premises you acquire during the policy term and which you intend to use as a residence premises;

   d. that part of any other premises where you reside and which is shown in the Declarations;

   e. any part of a premises not owned by any insured but where any insured may be temporarily residing;

   f. any part of a premises not owned by any insured which any insured may rent for non-business purposes, such as banquet halls and storage facilities;

   g. vacant land, other than farmland, owned by or rented to any insured;

   h. Cemetery plots or burial vaults owned by any insured;

   i. land owned by or rented to any insured on which a one or two family dwelling is being constructed as a residence for the insured; and

   j. 200 or less acres of farmland on which there are no buildings when such land is farmed by any-one other than any insured.

7. **Motor vehicle means** a motorized land vehicle. Motor vehicle does not include a recreational vehicle.

8. **Occurrence means** an accident that results in bodily injury or property damage and includes, as one occurrence, all continuous or repeated exposure to substantially the same generally harmful conditions.

9. **Personal injury means:**

   a. libel, slander or defamation of character;

   b. false arrest, detention or imprisonment, or malicious prosecution;

   c. invasion of privacy; or

   d. wrongful eviction or wrongful entry.

   Personal injury does not include bodily injury.

10. **Pollutants means** any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

11. **Property damage means** damage to or destruction of tangible property including resulting loss of use of that property.

12. **Recreational vehicle means** a motorized land vehicle designed primarily for recreational purposes but not designed for travel on public roads. Recreational vehicle does not include watercraft.

13. **Relative means** a person who resides with you and who is related to you by blood, marriage or adoption. Relative includes a ward or foster child who resides with you.

14. **Residence employee means:**

   a. an employee of any insured whose duties are in connection with the maintenance or use of the residence premises, including household or domestic services; or

   b. an employee who performs similar duties elsewhere but not in connection with any insured's business.

15. **Residence premises means:**

   a. the one or two family dwelling where you reside, including the building, the grounds and other structures on the grounds; or

   b. that part of any other building where you reside, including grounds and structures;

   which is described in the Declarations.

16. **Suit means** a civil court proceeding in which damages because of bodily injury, property damage or personal injury to which this insurance applies are alleged.

17. **You or your means** the first named insured shown in the Declarations and if an individual, your spouse who resides in the same household.

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 18 of 78 PageID #: 22

18. **Watercraft** means a conveyance capable of being used as a means of transportation on water.

19. **We, us** or **our** means the Company providing this insurance.

# SECTION I - PROPERTY PROTECTION

1. **COVERAGES**

   a. **Coverage A - Dwelling**

      (1) **Covered Property**

          We cover:

          (a) **your** dwelling located at the **residence premises** including structures attached to that dwelling. This dwelling must be used principally as **your** private residence.

          (b) construction material and supplies at or next to **your residence premises** for use in connection with **your** dwelling or other structures insured under Coverage B - Other Structures.

      (2) **Property Not Covered**

          We do not cover any land, including land **your** dwelling occupies.

   b. **Coverage B - Other Structures**

      (1) **Covered Property**

          We cover:

          (a) other structures at the **residence premises** which are not attached to the dwelling. This includes structures which are connected to the dwelling by only a utility line, fence or other similar connection.

          (b) other structures which **you** own and **you** use in connection with the **residence premises** that are located at an **insured premises** other than the **residence premises.**

      (2) **Property Not Covered**

          We do not cover:

          (a) any structures used for business purposes.

          (b) if not located at the **residence premises:**

              1) structures used as dwellings; nor

              2) structures originally constructed for use as a dwelling.

          (c) any land, including land the structures occupy.

          If the replacement cost of all structures covered under (1)(a) above is less than the limit of insurance, we will add the excess amount to the limit of insurance for Coverage A - Dwelling. If there are no other structures, we will add the limit of insurance for this coverage to the limit of insurance for Coverage A - Dwelling. This provision applies only if loss or damage to **your** dwelling exceeds the limit of insurance for Coverage A - Dwelling and **you** repair or replace the damaged property and the amount **you** actually and necessarily spend exceeds the limit of insurance for Coverage A - Dwelling.

   c. **Coverage C - Personal Property**

      (1) **Covered Property**

          We cover:

          (a) personal property owned or used by any **insured** anywhere in the world including property not permanently attached to or otherwise forming a part of realty.

          (b) at **your** option, personal property owned by others while it is in that part of the **residence premises** occupied by any **insured.**

          (c) at **your** option, personal property of a house guest or **residence employee** while in any residence of any **insured.**

17903 (2-96)

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 19 of 78 PageID #: 23

(d) any personal property which is usually at any insured's residence other than the residence premises for up to 10% of the Coverage C - Personal Property limit but not less than $1,000. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you begin to move there.

(2)  Property Not Covered

We do not cover:

(a) animals, birds or fish.

(b) aircraft, their equipment, accessories or parts. We do cover model aircraft neither designed nor used for transporting persons or cargo.

(c) personal property of roomers and boarders who are not related to any insured.

(d) personal property of tenants.

(e) data used for business including the media used to store the data. This includes:

1)  electronic data storage devices; and

2)  paper records of any kind.

We do cover the cost of unexposed or blank media and the cost of prerecorded computer programs which are available in the retail market place.

(f) personal property rented to or held out for rental to others by any insured. We do cover such personal property while on that part of the residence premises used exclusively by any insured or roomers and boarders.

(g) personal property except your appliances and other household furnishings in that part of the residence premises regularly rented to or held out for rental to others (except roomers or boarders) by any insured for use as living quarters.

(h) motor vehicles and recreational vehicles.

We do cover:

1) motor vehicles not subject to registration by a state regulatory agency which are used primarily for servicing and maintaining the residence premises.

2) recreational vehicles which are used primarily for servicing and maintaining the residence premises.

3) A conveyance designed primarily to provide mobility to the handicapped, provided it is not licensed for operation on public roadways.

4) electrically powered vehicles designed for and used as a toy.

(i) motor vehicle and recreational vehicle equipment, accessories and parts.

We do cover:

1) citizens band radios, cellular telephones, radio transceivers, radio transmitters and similar transmitting equipment; and

2) devices or instruments for the recording or reproduction of sound;

while in or upon a motor vehicle or recreational vehicle if capable of being operated by both electrical current from the vehicle operating system and electrical current from a source other than the vehicle; and

3) accessories, antennas, tapes, wires, records, discs and other media for use with the items described in (i)1) and 2) above while in or upon such vehicles.

4) spare or replacement motor vehicle and recreational vehicle equipment, accessories or parts when not installed in or upon the motor vehicle or recreational vehicle.

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 20 of 78 PageID #: 24

(j) any device designed or used to detect, avoid or locate radar or any other speed measuring or calculating apparatus while in or upon a motor vehicle.

(k) property specifically described and insured by this policy or any other insurance.

(l) contraband or property in the course of illegal transportation or trade; or property seized or subject to seizure by any governmental authority.

(3) **Special Limits of Insurance for Certain Personal Property**

Special limits of insurance apply to the following groups of personal property. These limits do not increase the limit of insurance for Coverage C - Personal Property. The special limit for each group is the most we will pay in any one loss for all personal property in that group.

(a) $250 for money, bank notes, and bullion; coins and medals and other numismatic property; and precious metals including platinum, gold and silver, but not goldware or silverware.

(b) $1,000 for securities, checks, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes; passports, personal data and records, manuscripts, tickets; and stamps and other philatelic property. This limit applies to these categories regardless of the media on which the material exists and includes the cost to research, replace or restore the information from the lost or damaged material.

(c) $1,000 for watercraft, including their equipment, accessories or parts, trailers and outboard motors.

(d) $1,000 for trailers not used to transport watercraft.

(e) $1,000 for theft of jewelry, watches, precious and semi-precious stones, and furs, including any article containing fur which represents its principal value.

(f) $2,500 for cemetery markers, headstones and urns.

(g) $5,000 for theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

(h) $2,500 for theft of guns and their accessories, parts or equipment.

(i) $2,500 for personal property located on the residence premises that is used in any way or at any time for business purposes.

(j) $1,000 for personal property located away from the residence premises that is used in any way or at any time for business purposes.

(k) $10,000 for loss by theft of carpets (except wall-to-wall carpet), tapestries, rugs, wall-hangings or other similar articles. However, we shall not pay more than $5,000 for any one article.

(l) $1,000 for trading cards.

(m) $2,500 for spare or replacement motor vehicle and recreational vehicle equipment, accessories or parts when not installed in or upon the motor vehicle or recreational vehicle.

(n) $2,500 for your appliances and other household furnishings in that part of the residence premises regularly rented to or held for rental to others (except roomers or boarders) by you.

(o) $1,000 for:

1) citizens band radios, cellular telephones, radio transceivers, radio transmitters and similar transmitting equipment; and

2) devices or instruments for the recording or reproduction of sound;

while in or upon a motor vehicle or recreational vehicle if capable of being

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 21 of 78 PageID #: 25

operated by both electrical current from the vehicle operating system and electrical current from a source other than the vehicle; and

    3) accessories, antennas, tapes, wires, records, discs and other media for use with items (o)1) and (o)2) above while in or upon such vehicles. However, we shall pay no more than $250 in any one loss for these items.

**d. Coverage D - Additional Living Expense And Loss Of Rents**

If a covered loss makes your residence premises unfit to live in, we will pay, at your option, either: )

(1) the reasonable increase in your living expenses necessary to maintain your normal standard of living while you live elsewhere; or

(2) the fair rental value of that part of the residence premises where you reside, less any charges and expenses which do not continue while the residence premises is unfit to live in.

We will pay for only the shortest time required to repair or replace the residence premises or for you to permanently relocate. We will also pay for your loss of normal rents resulting from a covered loss while the rented part of the residence premises is unfit to live in, less charges and expenses which do not continue during that time. We will pay this loss of normal rents only for the shortest time needed to make the rented part fit to live in.

If damage caused by a peril we insure against occurs at a neighboring premises, we will pay reasonable additional living expenses and loss of normal rents as provided in (1) and (2) above for up to two weeks provided civil authorities prohibit occupancy of the residence premises.

These periods of time will not be shortened by the expiration of this policy. We will not pay for loss or expense because of the cancellation of any lease or agreement.

A deductible amount stated in the Declarations shall apply only once if damage resulting from the same

loss is covered under more than one of the coverages described above.

**2. PERILS WE INSURE AGAINST**

**a. Coverage A - Dwelling and Coverage B - Other Structures**

We cover risk of accidental direct physical loss to covered property described under Coverage A - Dwelling and Coverage B - Other Structures except for losses excluded elsewhere in this policy.

**b. Coverage C - Personal Property**

We cover risk of accidental direct physical loss to covered property described under Coverage C - Personal Property caused by any of the following perils except for losses excluded elsewhere in this policy:

(1) Fire or Lightning.

(2) Windstorm or Hail. This peril does not include loss:

    (a) to covered property in any building, caused by rain, snow, sand, sleet or dust unless the building is first damaged by the direct force of wind or hail, creating an opening through which the rain, snow, sand, sleet or dust enters the building; nor

    (b) to watercraft (except rowboats and canoes while on residence premises) and their trailers, equipment, accessories, parts and motors unless inside a fully enclosed building.

(3) Explosion.

(4) Riot or Civil Commotion.

(5) Aircraft.

(6) Vehicles.

(7) Smoke, if the loss is sudden and accidental. This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

(8) Vandalism and Malicious Mischief.

Case 3:16-cv-01967 Document 1-2 Filed 07/28/16 Page 22 of 78 PageID #: 26

(9) Theft or Attempted Theft, including loss of covered property from a known place if it is likely that a theft has occurred.

(a) This peril does not include theft:

1) committed by any insured or by any other person regularly residing at the **residence premises**. Covered property of a student who is an **insured** is covered while located at a residence away from the **residence premises**, if the theft is committed by a person who is not an **insured**;

2) in or from a dwelling under construction or of construction materials and supplies until the dwelling is completed and occupied; nor

3) from any part of the **residence premises** rented by any **insured** to other than an **insured**.

(b) This peril does not include theft away from the **residence premises** of:

1) covered property while in any other residence or its premises owned, rented or occupied by any **insured** except while any **insured** is temporarily residing there. Covered property of any **insured** who is a student is covered at a residence away from the **residence premises** if the student has been there at any time during the 45 days just before the loss.

   If the **residence premises** is a newly acquired residence, covered property in the immediate past residence shall not be considered property away from the **residence premises** for the first 30 days after you begin moving covered property from that residence;

2) watercraft and their equipment, accessories, parts and outboard motors; nor

3) trailers, camping trailers and campers designed to be pulled by or carried on a motor vehicle.

(10) Falling Objects. This peril does not include loss to covered property within a building unless the falling object first damages the exterior of the building. We do not cover damage to the falling object.

(11) Weight of ice, snow or sleet which damages covered property in a building.

(12) Sudden and accidental tearing apart, cracking, burning or bulging of a heating, air conditioning or automatic fire protection sprinkler system or a water heating appliance. This peril does not include loss which is caused by or results from freezing.

(13) Accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or domestic appliance. This peril does not include loss:

(a) to the appliance or system from which the water or steam escapes;

(b) caused by or resulting from freezing, except as provided by the peril of freezing; nor

(c) caused by or resulting from water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

   A plumbing system does not include a sump, sump pump or related equipment.

(14) Freezing of plumbing, heating, air conditioning or an automatic fire protection sprinkler system or a domestic appliance.

(15) Sudden and accidental loss caused by an increase or decrease of artificially generated electrical currents. This peril does not include loss to tubes, transistors or similar electronic components.

(16) Volcanic Eruption. This peril does not include loss caused by earthquake or land shock waves or tremors which occur before, during or after a volcanic eruption. All

volcanic eruptions that occur within a period of 72 hours will be considered one volcanic eruption.

3. **EXCLUSIONS**

a. **Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property**

We do not cover loss to covered property caused directly or indirectly by any of the following, whether or not any other cause or event contributes concurrently or in any sequence to the loss:

(1) Enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy. This exclusion does not apply to loss to covered property caused by actions of civil authorities to prevent the spread of a fire caused by a peril we insure against.

(2) Earth movement, meaning earthquake, including land shock waves or tremors before, during or after volcanic eruption; landslide; mine subsidence; mudflow; erosion; earth sinking; rising or shifting. This exclusion does not apply to ensuing direct loss caused by fire, explosion, breakage of building glass or safety glazing material or theft.

(3) Water damage, meaning:

(a) flood, surface water, waves, tidal water or overflow of a body of water. We do not cover spray from any of these, whether or not driven by the wind;

(b) water or sewage from outside the plumbing system that enters through sewers or drains;

(c) water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(d) water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building, sidewalk, driveway, swimming pool or other structure.

This exclusion does not apply to ensuing direct loss to covered property caused by theft, fire or explosion.

(4) Failure or interruption of power or other utility service which occurs away from the residence premises. We will pay for loss caused solely by a peril we insure against that ensues at the residence premises.

(5) Freezing of plumbing, heating, air conditioning or automatic fire protection sprinkler systems or domestic appliances, or by discharge, leakage or overflow from the system or appliance caused by freezing while the building is vacant, unoccupied or in the course of construction unless, prior to the loss, you have either:

(a) shut off the water supply and drained the systems and appliances; or

(b) maintained heat in the building.

(6) Failure of any insured to use all reasonable means to protect covered property at and after the time of loss or when the covered property is endangered.

(7) War, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these.

(8) Nuclear action, meaning nuclear reaction, radiation, radioactive contamination, however caused and whether controlled or uncontrolled, or any consequence of any of these. Nuclear action includes the discharge of a nuclear weapon, even if accidental. Loss caused by nuclear action is not considered loss by the perils of Fire, Explosion or Smoke. Direct loss by fire resulting from nuclear action is covered.

(9) An action by or at the direction of any insured committed with the intent to cause a loss.

b. **Coverage A - Dwelling and Coverage B - Other Structures**

Except as to ensuing loss not otherwise excluded, we do not cover loss resulting directly or indirectly from:

17003 (2-96)

(1) Weather conditions which contribute in any way with any events excluded in exclusions 3.a.(1) through 3.a.(9) above to cause the loss;

(2) Acts or decisions of any person, group, organization or governmental body; or their failure to act or decide.

(3) Faulty, inadequate or defective:

  (a) construction, reconstruction, repair, remodeling or renovation;

  (b) materials used in construction, reconstruction, repair, remodeling or renovation;

  (c) design, workmanship or specifications;

  (d) siting, surveying, zoning, planning, development, grading or compaction; or

  (e) maintenance;

  of a part or all of the residence premises or any other property.

(4) (a) wear and tear, marring, scratching or deterioration;

  (b) inherent vice, latent defect or mechanical breakdown;

  (c) rust, corrosion or electrolysis, mold or mildew, or wet or dry rot;

  (d) smog, smoke from agricultural smudging or industrial operations;

  (e) settling, shrinkage, bulging or expansion, including resultant cracking of pavement, patios, foundations, walls, floors or ceilings;

  (f) birds, vermin, rodents or insects;

  (g) animals owned or kept by any insured; or

  (h) discharge, release, escape, seepage, migration or dispersal of pollutants unless caused by a peril we insure against under Coverage C - Personal Property. This exclusion does not apply to ADDITIONAL COVERAGE, o. Heating Fuel Damage.

If because of any of these, water escapes from a plumbing, heating, air conditioning or automatic fire protection sprinkler system or domestic appliance, we cover loss caused by the water. We also cover the cost of tearing out and replacing any part of the covered building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water escapes.

(5) Theft in or from a dwelling under construction or of construction materials and supplies until completed and occupied.

(6) Constant or repeated seepage or leakage of water or steam from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or from within a domestic appliance which occurs over a period of weeks, months or years.

(7) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock.

(8) Vandalism or malicious mischief or breakage of glass or safety glazing materials if the dwelling has been vacant for more than 30 consecutive days just before the loss. A building under construction is not considered vacant.

(9) Collapse of a building or any part of a building except as provided by ADDITIONAL COVERAGE, h. Collapse.

4. ADDITIONAL COVERAGES

a. Debris Removal

We will pay reasonable necessary expenses you incur to remove debris of covered property insured under Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property following a loss caused by a peril we insure against. We will also pay reasonable necessary expenses you incur to remove ash, dust or particles from a volcanic eruption that has caused direct loss to a building or covered property within a building. This coverage does not apply to removal of trees, limbs and branches.

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 25 of 78 PageID #: 29

If damage to the covered property and the cost of debris removal is more than our limit of insurance for the covered property, we will pay up to an additional 5% of that limit for debris removal.

b.   **Fire Department Charges**

We will pay up to $500 for your liability under an agreement for service charges made by a fire department when called to protect your covered property from a peril we insure against. These payments are in addition to the amount of insurance applying to the covered property. No deductible applies to this coverage.

c.   **Credit Card, Charge Plate, Fund Transfer Card, Check Forgery and Counterfeit Money Coverages**

(1)   **Credit Card, Charge Plate and Fund Transfer Card Coverage**

If any insured is legally required to pay for the unauthorized use of a credit card or charge plate issued to any insured, we will cover the loss. We will also pay for loss which results from unauthorized use of a fund transfer card issued to any insured. A fund transfer card is one used for deposit, withdrawal or transfer of funds. We do not cover use of the credit card, charge plate or fund transfer card:

(a)   by a resident of your household;

(b)   by someone to whom any insured has given the card or plate; nor

(c)   unless the insured has met all the terms under which the card or plate was issued.

(2)   **Check Forgery Coverage**

We cover loss sustained by any insured which is caused by forgery or alteration of a check or other negotiable instruments.

(3)   **Counterfeit Money Coverage**

We cover loss sustained by any insured because of acceptance in good faith of counterfeit United States or Canadian paper currency.

We will not pay more than $1,000 for any one loss involving one or more of these coverages:

Repeated losses caused by one person or in which one person is involved are to be considered one loss. We do not cover any loss that arises from a business of any insured or dishonesty of an insured. No deductible applies to these coverages.

We may investigate any claim or settle any suit as we think appropriate. We will not defend after we have paid an amount equal to the limit of our liability.

If a claim is made or a suit is brought against any insured for liability under the Credit Card, Charge Plate or Fund Transfer Card Coverage, we will defend that insured. We will do this at our expense, using attorneys of our choice.

We may at our option and at our expense, defend any insured or that person's bank against a suit to enforce payment under the Check Forgery Coverage.

d.   **Emergency Removal of Personal Property**

We will pay for loss to covered personal property damaged in any way when being removed or while removed from an insured premises because of danger from a peril we insure against. Coverage is limited to a 30 day period beginning on the date of removal. We will also pay for reasonable necessary expenses incurred by you for the removal and return of the covered property. This is not an additional amount of insurance.

e.   **Necessary Repairs After Loss**

We will pay the reasonable cost of necessary, temporary repairs made solely to protect covered property from further damage following a loss caused by a peril we insure against. This is not an additional amount of insurance.

f.   **Trees, Shrubs, Plants and Lawns**

We will pay up to 5% of the Coverage A - Dwelling limit of insurance for loss to outdoor trees, shrubs, plants and lawns at the residence premises. Coverage applies to only loss, including debris removal, caused by the following perils we insure against: Fire or Lightning, Explosion, Riot or Civil Commotion, Aircraft, Vehicles not owned or operated by an occupant of the residence premises, Vandalism and Malicious Mischief or Theft.

17903 (2-96)

Payments are in addition to the limit of insurance applying to Coverage A - Dwelling. We will not pay:

(1) more than $500 for any one outdoor tree, shrub or plant; nor

(2) for any trees, shrubs, plants or lawns grown for business purposes.

g. **Tree Debris Removal**

We will pay up to $500 for any one loss for reasonable necessary expenses you incur for removing trees, limbs and branches from the residence premises if:

(1) caused by any peril we insure against under Coverage A - Dwelling provided such peril is not listed under f. Trees, Shrubs, Plants and Lawns; and

(2) this coverage is not provided elsewhere in this policy.

The limit of $500 for any one loss applies, regardless of the number of fallen trees, limbs and branches.

h. **Collapse**

We cover risk of direct physical loss involving collapse to covered property insured under Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property only if:

(1) the loss involves collapse of a building or part of a building; and

(2) the collapse is caused by any of the following:

(a) hidden decay, hidden insect damage or hidden vermin damage;

(b) weight of people, contents, animals, equipment and/or furniture;

(c) defective material or defective methods used in construction, reconstruction, renovation or remodeling;

(d) weight of rain, ice, sleet or snow on a roof; or

(e) a peril we insure against under Coverage C - Personal Property.

Collapse does not include settling, cracking, shrinkage, bulging or expansion.

Under h.(2)(a)-h.(2)(d) above, coverage does not apply to loss to awnings, fences, pavements, patios, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations, retaining walls, bulkheads, piers, wharves or docks unless damage is caused directly by collapse of a building. This is not an additional amount of insurance.

i. **Loss Assessment**

We will pay up to $2,500 for your share of any loss assessment charged against you as the owner or tenant of the residence premises by an association or corporation of property owners if the assessment is made as a result of direct physical loss caused by a peril we insure against to property owned collectively by all members of the association or corporation. Coverage is included for loss occurring during the policy term if the assessment is charged against you after the policy term.

We will not pay if the loss is caused by earthquake or land shock waves or tremors which occur before, during or after a volcanic eruption or mine subsidence. We will not pay for any loss assessments charged by a governmental body.

The most that we will pay for any one loss is $2,500 regardless of the number of assessments.

j. **Glass or Safety Glazing Material**

We cover:

(1) the breakage of glass or safety glazing materials which are part of a covered building including storm doors and storm windows.

(2) damage to covered property by glass or safety glazing material which is part of a covered building including storm doors and storm windows.

This coverage does not include loss to the residence premises if the dwelling has been vacant for more than 30 consecutive days immediately preceding the date of loss. A dwelling under construction is not considered vacant. Loss for damage to glass will be based on replacement with safety glazing materials when required by

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 27 of 78 PageID #: 31

ordinance or law. This is not an additional amount of insurance.

### k. Rekeying of Locks

We will pay reasonable necessary expenses you incur to rekey locks on exterior doors of the dwelling located at the **residence premises**, provided the keys to such locks are a part of a theft loss covered by this policy. No deductible applies to this coverage.

### l. Power Interruption

We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from a power interruption that takes place at the **residence premises**. The power interruption must be caused by a peril we insure against occurring at the **residence premises**. This is not an additional amount of insurance.

### m. Refrigerated Products

We will pay for damage to the contents of a freezer or refrigerator located at the **residence premises** provided the damage is the direct result of a power failure away from the **residence premises**, or an electrical or mechanical failure of the refrigeration system. Power, electrical or mechanical failure does not include:

(1) removing of a plug from an electrical outlet; nor

(2) turning off of an electrical switch unless caused by a peril we insure against.

If any Insured is aware of the power, electrical or mechanical failure, all reasonable action to protect the covered property from further damage must be taken or this coverage shall be void.

The most we will pay in any one loss is $250 regardless of the number of freezers or refrigerators involved in the loss. This is not an additional amount of insurance.

### n. Arson Reward

We will pay for information which leads to a conviction for arson in connection with a fire loss to covered property insured by this policy. The most we will pay is $1,000 regardless of the

number of persons who provide information. This payment shall be in addition to the amount of insurance applying to the covered property. No deductible applies to this coverage.

### o. Heating Fuel Damage

We will pay for loss to covered property at the **residence premises** caused by or resulting from:

(1) accidental discharge or overflow of heating fuel from your heating system, including your heating fuel storage tank;

(2) delivery of heating fuel into a wrong receptacle at the **residence premises**; or

(3) delivery of one fuel for another at the **residence premises**.

This is not an additional amount of insurance.

## 5. DEDUCTIBLE

If a deductible is shown in the Declarations, no loss shall be paid until the amount of loss exceeds the deductible. The deductible shall apply to all coverages unless stated otherwise.

If this policy includes endorsements which contain separate deductibles, that deductible shall apply to loss covered by that endorsement. However, if damage resulting from the same loss is covered by this policy and an attached endorsement, only one deductible shall apply. We shall apply the largest applicable deductible to the entire loss.

## 6. CONDITIONS

### a. INSURABLE INTEREST

Subject to the applicable limit of insurance, we will not pay more than the insurable interest the insured has in the covered property at the time of loss.

### b. HOW LOSSES ARE SETTLED

Loss to covered property will be settled as follows:

(1) If the damaged covered property is:

(a) personal property insured under Coverage C - Personal Property;

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 28 of 78 PageID #: 32

(b) structures that are not buildings;

(c) antennas, carpeting, awnings, domestic appliances and outdoor equipment, whether or not attached to buildings; or

(d) structures covered under the provisions of Coverage B - Other Structures, sub-paragraph (1)(b);

we will pay the actual cash value of the property at the time of loss. Actual cash value includes a deduction for depreciation. In no event will we pay more than the smallest of either:

(a) the limit of insurance applying to the damaged covered property; or

(b) the cost to repair or replace the damaged covered property with property of like kind and quality.

(2) If the damaged covered property is insured under Coverage A - Dwelling or Coverage B - Other Structures and not included in (1) above, we will pay as follows:

(a) If at the time of loss, the limit of insurance applying to the damaged covered property is 80% or more of the full replacement cost of that covered property, we will pay the full cost to repair or replace the damaged part of such covered property. No deduction will be made for depreciation. In no event shall we pay more than the smallest of:

1) the limit of insurance applying to the damaged covered property;

2) the cost to replace the damaged covered property with equivalent construction for equivalent use at the residence premises; or

3) the amount actually spent to repair or replace the damaged covered property.

(b) If at the time of loss, the limit of insurance applying to the damaged covered property is less than 80% of the full replacement cost of that covered property, we will pay the greater of either:

1) the actual cash value of the damaged covered property; or

2) the cost to repair or replace the covered property, less the deductible amount, multiplied by the ratio of the limit of insurance applying to the damaged covered property to 80% of its full replacement cost. No deduction will be made for depreciation.

In no event shall we pay more than the smallest of:

1) the limit of insurance applying to the damaged covered property;

2) the cost to replace the damaged covered property with equivalent construction for equivalent use at the residence premises; or

3) the amount actually spent to repair or replace the damaged covered property.

If you do not repair or replace the damaged covered property, we shall pay the actual cash value of the property at the time of loss. Actual cash value includes a deduction for depreciation.

Full replacement cost does not include the cost of excavations, underground pipes, wiring and drains, foundations or other supports below the surface of the lowest basement floor. If there is no basement, it does not include the cost of those supports below the surface of the ground and inside the foundation walls.

(3) If the full cost to repair or replace the damaged covered property is more than $1000 or more than 5% of the limit of insurance applying to such covered property, we will not pay more than the actual cash value until actual repair or replacement is completed.

(4) You may disregard the provisions of b.(2) above and make an actual cash value claim for loss or damage to property covered under Coverage A - Dwelling and Coverage B - Other Structures. If you do, you may within 180 days after the loss make a further claim under the provisions of b.(2) above.

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 29 of 78 PageID #: 33

(5) We may make a cash settlement and take all or part of the damaged covered property at its appraised or agreed on value, or repair or replace the damaged property with property of like kind and quality. We must give you notice of our intention within 30 days after we receive your proof of loss.

### c. APPRAISAL

If you and we fail to agree on the actual cash value or amount of loss covered by this policy, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire.

The appraisers shall then appraise the loss, stating separately the actual cash value and loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the actual cash value or amount of loss.

Each party will pay the appraiser it chooses, and equally pay the umpire and all other expenses of the appraisal.

### d. ABANDONED PROPERTY

We are not obliged to accept abandoned property.

### e. LOSS TO A PAIR OR SET

We may repair or replace any part of the pair or set to restore it to its value before the loss, or we may pay the difference between the actual cash value of the property before and after the loss.

### f. OUR PAYMENT OF LOSS

We will adjust any loss with you, and pay you unless another payee is named in the policy. We will pay within 60 days after we receive your proof of loss and all other requested documents and the amount of loss is finally determined by an agreement between you and us, a court judgment or an appraisal award.

### g. SUIT AGAINST US

We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year after the loss or damage occurs.

### h. NO BENEFIT TO BAILEE

This insurance will not, in any way, benefit any person or organization who may be caring for or handling property for a fee.

### i. OTHER INSURANCE

If both this and other insurance apply to a loss, we will pay our share. Our share will be the ratio of this insurance to the total amount of all insurance which applies.

### j. ADJUSTED VALUE PROVISION

The limit of insurance applying to Coverage A - Dwelling will be adjusted at the end of each policy term by the percentage change in construction costs during the policy term in the area in which the residence premises is located.

Each Renewal Declarations will show the actual percentage used to compute the revised limits of insurance. The limit for Coverage A - Dwelling will be rounded to the nearest $500 for an annual policy period, subject to a $1,000 minimum. The limit of Coverage A - Dwelling will be rounded to the nearest $250 for a six-month term, subject to a $500 minimum.

### k. MORTGAGE CLAUSE

This provision applies to only the mortgagee named in the Declarations. It does not affect your rights or duties under this policy.

The word mortgagee includes a trustee under a deed of trust and a contract seller under a land contract.

Loss covered by the policy, if any, shall be payable to the mortgagee, as their interest may appear, under all present or future mortgages upon the property described in the Declarations

17903 (2-96)

of this policy in which the mortgagee may have an interest. If more than one mortgagee is named in the Declarations, payment shall be made in order of precedence of the mortgages.

If we deny your claim, such denial will not apply to a valid claim of the mortgagee, provided the mortgagee:

(1) notifies us of any change of ownership or occupancy or substantial change in exposure which has come to the knowledge of the mortgagee;

(2) pays any premium due under this policy that you or the mortgagor has neglected to pay; and

(3) submits to us, within 60 days after receiving notice from us of your failure to do so, a proof of loss signed and sworn to by the mortgagee.

Whenever we pay the mortgagee any sum for loss under this policy and deny payment to you for such loss:

(1) to the extent of such payment, we are legally subrogated to all rights of the mortgagee under the terms of the mortgage on the covered property; or

(2) at our option, we may pay to the mortgagee the whole principal due, with interest accrued, and shall then receive full assignment and transfer of the mortgage and of all collateral.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

We may cancel or nonrenew this policy at any time as provided by its terms. We will notify the mortgagee at least 10 days prior to the effective date of the cancellation or nonrenewal. We may also cancel this agreement by providing 10 days notice to the mortgagee.

All policy terms and conditions apply to the mortgagee.

# SECTION II - PERSONAL LIABILITY PROTECTION

1. **COVERAGES**

   a. **Coverage E - Personal Liability**

      (1) We will pay all sums any insured becomes legally obligated to pay as damages because of or arising out of bodily injury or property damage caused by an occurrence to which this coverage applies. However, with respect to any aircraft, motor vehicle, recreational vehicle or watercraft:

         (a) we will pay damages because of or arising out of the ownership, maintenance, use, loading or unloading of only:

            1) a motor vehicle stored on an insured premises which has been rendered inoperable by complete detachment of parts, or by mechanical breakdown;

            2) motor vehicles not subject to registration by a state regulatory agency

   which are used primarily for servicing and maintaining an insured premises;

            3) a conveyance designed primarily to provide mobility to the handicapped, provided it is not subject to registration by a state regulatory agency;

            4) electrically powered vehicles designed for and used as toys;

            5) a watercraft , camper, home or utility trailer when neither being towed by nor carried on a motor vehicle;

            6) recreational vehicles owned by any insured while on an insured premises;

            7) recreational vehicles that are motorized golf carts;

17903 (2-96)

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 31 of 78 PageID #: 35

8)  a watercraft owned by any insured:

   a)  powered by inboard or inboard-
       outdrive motor power of 175
       horsepower or less;

   b)  powered by one or more out-
       board motors with:

       i.   total combined horsepower
            of 120 HP or less; and

       ii.  total combined horsepower
            not in excess of that speci-
            fied by the watercraft man-
            ufacturer; and

   c)  that is a sailboat less than 26
       feet in length; and

9)  a model aircraft neither designed,
    nor used for transporting persons or
    cargo.

(b) we will pay damages because of or aris-
    ing out of the maintenance, use, loading
    or unloading of only:

   1)  a motor vehicle which is not owned
       nor operated by nor rented to nor
       loaned to any insured;

   2)  a recreational vehicle which is not
       owned by any insured; and

   3)  a watercraft not owned by nor
       available for regular use by any in-
       sured provided use of the water-
       craft is with a reasonable belief of
       permission to do so.

(2) We will pay all sums any insured becomes
    legally obligated to pay as damages be-
    cause of or arising out of personal injury
    caused by an incident to which this cover-
    age applies.

We will settle or defend, as we consider appro-
priate, any claim or suit for damages covered by
this policy.  We will do this at our expense,
using attorneys of our choice.  This agreement
to settle or defend claims or suits ends when
we have paid the limit of our liability.

b.  Coverage F - Medical Payments to Others

A person who sustains bodily injury is entitled
to this coverage when that person is:

   (1) on an insured premises with the permis-
       sion of an insured; or

   (2) elsewhere, if the bodily injury:

       (a) arises out of a condition on the insured
           premises or the adjoining ways;

       (b) is caused by the activities of an insured
           or a residence employee in the course
           of employment by an insured;

       (c) is caused by an animal owned by or in
           the care of an insured; or

       (d) is sustained by a residence employee
           and arising out of and in the course of
           employment by an insured;

   (3) injured because of the operation or use of
       an aircraft, motor vehicle, recreational
       vehicle or watercraft covered by Coverage
       E - Personal Liability of this policy.

We will pay the reasonable expenses incurred
for necessary:

   (1) medical, surgical, X-ray and dental services;

   (2) prosthetic devices, eye glasses, hearing
       aids, drugs and medicines; and

   (3) ambulance, hospital, licensed nursing and
       funeral services.

These expenses must be incurred within three
years from the date of the occurrence causing
bodily injury covered by this policy.  The bodily
injury must be discovered, treated and reported
to us within one year of the occurrence.

We may pay the injured person or the party that
renders the medical services.  Payment under
this coverage is not an admission of liability by
us or an insured.

2.  EXCLUSIONS

   a.  Coverage E - Personal Liability and Coverage
       F - Medical Payments to Others do not apply:

       (1) to bodily injury, property damage or per-
           sonal injury arising out of any premises

17903 (2-96)

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 32 of 78 PageID #: 36

owned, rented or controlled by any insured which is not an insured premises. This exclusion does not apply to bodily injury to a residence employee arising out of and in the course of employment by any insured at such premises.

(2) to bodily injury or personal injury to a fellow employee of an insured sustained in the course of employment.

(3) to bodily injury or personal injury because of or arising out of corporal punishment administered by or at the direction of an insured if that insured is a member of the faculty or teaching staff of any school or college.

(4) to bodily injury or personal injury because of or arising out of a communicable disease transmitted by any insured.

(5) to bodily injury or property damage because of or arising out of any insured's preparation for, practice or participation in any prearranged racing, speed or demolition contest involving any aircraft, motor vehicle, recreational vehicle or watercraft. This exclusion does not apply to a watercraft that is a sailboat less than 26 feet in length.

(6) to bodily injury or property damage because of or arising out of the ownership, maintenance, use, loading or unloading of any water jet propelled watercraft of any kind less than 16 feet in length;

(7) to bodily injury or property damage because of or arising out of the ownership, maintenance, use, loading or unloading of any aircraft, motor vehicle, recreational vehicle or watercraft. This exclusion does not apply:

(a) to aircraft, motor vehicles, recreational vehicles or watercraft described under 1. COVERAGES; a. Coverage E - Personal Liability, (1)(a)1)-(1)(a)9) and (1)(b)1)-(1)(b)3); or

(b) to bodily injury to any residence employee arising out of or in the course of employment by an insured.

(8) to parental liability for bodily injury or property damage, whether or not imposed by

law, because of or arising out of actions of a child or minor for use of an aircraft, motor vehicle, recreational vehicle or watercraft if such use is excluded or otherwise limited by this policy.

(9) to bodily injury or property damage because of or arising out of:

(a) the entrustment to any person by any insured; nor

(b) the supervision of any person by any insured;

with regard to the ownership, maintenance, use, loading or unloading of an aircraft, motor vehicle, recreational vehicle or watercraft.

This exclusion does not apply:

(a) to aircraft, recreational vehicles and watercraft that are covered by Coverage E - Personal Liability; nor

(b) to motor vehicles that are covered by Coverage E - Personal Liability. This exception does not apply to motor vehicles that are not owned by any insured.

(10) to bodily injury or property damage because of or arising out of the rendering of or failure to render professional services of any kind.

(11) to bodily injury or property damage because of or arising out of a business owned or financially controlled by an insured or by a partnership or joint venture of which an insured is a partner or member. This exclusion does not apply to activities of an insured ordinarily incident to nonbusiness pursuits.

(12) to bodily injury or property damage reasonably expected or intended by the insured. This exclusion applies even if the bodily injury or property damage is of a different kind or degree, or is sustained by a different person or property, than that reasonably expected or intended.

(13) to bodily injury or property damage caused by war, including any undeclared war, civil war, insurrection, rebellion,

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 33 of 78 PageID #: 37

revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these.

b.  **Coverage E - Personal Liability** does not apply:

(1) to liability assumed under:

(a) any oral contract or agreement; or

(b) any contract or agreement:

1) in connection with any business of an insured; nor

.2) entered into after the event causing the loss.

(2) to liability for your share of any loss assessment charged against all members of an association, corporation or community of property owners. This exclusion does not apply to ADDITIONAL COVERAGE d. Loss Assessment.

(3) to liability for any property stolen or converted by the insured.

(4) to bodily injury or property damage when any insured is covered by or is required to be covered by a nuclear energy liability policy. This exclusion applies even if the limits of liability of that policy have been exhausted.

(5) to bodily injury to any person if an insured has a workers compensation, nonoccupational disability or occupational disease benefits covering the bodily injury.

(6) to bodily injury or personal injury to any insured.

(7) to personal injury:

(a) in connection with any business, occupation, trade or profession; nor

(b) with respect to any publication or utterance made knowing it to be false.

(8) to property damage to property owned by any insured.

(9) to property damage to property occupied or used by any insured or rented to or in the care of any insured. This exclusion does not apply to property damage to such property caused by fire, smoke or explosion.

c.  **Coverage F - Medical Payments to Others** does not apply:

(1) to bodily injury to any person who is entitled to benefits which are provided or required to be provided under any:

(a) workers compensation law;

(b) nonoccupational disability law; nor

(c) occupational disease law.

(2) to bodily injury from any:

(a) nuclear reaction;

(b) radiation;

(c) radioactive contamination; nor

(d) consequence of (2)(a)-(2)(c).

(3) to bodily injury to any insured or any other person, except a residence employee, who regularly resides on any part of any insured premises. This exclusion does not apply to bodily injury because of the operation or use of a recreational vehicle that is a motorized golf cart.

3.  **ADDITIONAL COVERAGES**

In addition to our limit of insurance, we will also pay the following:

a.  **Damage to Property of Others**

(1) We will pay for property damage caused by any insured to property owned by others. We will pay no more than the full cost of repair or the replacement cost at the time of the loss. In no event shall we pay more than $500 in any one occurrence.

(2) We will not pay for property damage:
(a) caused intentionally by any insured who has attained the age of 13.

(b) to property owned by any insured nor

owned by or rented to any tenant of an insured or any resident of your household.

(c) to property to the extent it is covered by SECTION I - PROPERTY PROTECTION of this policy.

(d) arising out of:

1) any act or omission in connection with a premises (other than an insured premises) owned, rented or controlled by any insured;

2) a business;

3) ownership, maintenance or use of an aircraft, motor vehicle or watercraft; nor

4) theft or conversion of property by the insured.

b.  Miscellaneous Expenses

(1) All costs we incur and all costs charged against any insured in the settlement of any claim or defense of any suit.

(2) Interest on damages owed by you because of a judgment in a suit we defend and accruing:

(a) after the judgment, and until we pay, offer or deposit in court, the amount for which we are liable under this policy; or

(b) before the judgment, where owed by law, but only on that part of the judgment we pay.

(3) Premiums on bonds required in any suit we defend. We will not pay the premium for any portion of a bond for an amount that is greater than our limit of liability. We have no obligation to apply for or furnish these bonds.

(4) Loss of earnings up to $100 a day, but not other income, when we ask you to help us investigate or defend any claim or suit.

(5) Any other reasonable expenses incurred at our request.

c.  First Aid Expenses

Expenses for first aid to other persons at the time of the occurrence. We will pay only expenses which any insured incurs for treatment of bodily injury covered by this policy. We will not pay for first aid to any insured.

d.  Loss Assessment

We will pay up to $2,500 for your share of any loss assessment charged against you as an owner or tenant of the residence premises by an association or corporation of property owners if the assessment is made as a result of:

(1) an occurrence or incident covered by SECTION II - PERSONAL LIABILITY PROTECTION of this policy; or

(2) liability for an act of a director, trustee or officer in his or her capacity as such. The director, trustee or officer must:

(a) be elected by the members of the association or corporation; and

(b) serve without pay for performing his or her duties.

We will not pay for any loss assessments charged by a governmental body.

The most we will pay is $2,500 regardless of the number of assessments, for loss arising out of an occurrence, incident or a covered act of a director, officer or trustee. An act involving more than one director, officer or trustee shall be considered a single act.

4.  LIMIT OF INSURANCE

We will pay damages up to the limits stated in the Declarations as follows:

a.  Coverage E - Personal Liability

(1) We will pay damages for bodily injury, property damage and personal injury up to the limit stated in the Declarations under "Personal Liability." That limit is the amount of coverage and the most we will pay for all damages because of or arising out of:

(a) all bodily injury and all property damage in any one occurrence; and

17903 (2-96)

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 35 of 78 PageID #: 39

(b) all personal injury in any one incident.

In no event shall we pay more than the limit of insurance for all damages because of or arising out of an occurrence and an incident which result from the same set of general circumstances.

(2) The limit of insurance is not increased because of the number of:

    (a) insureds;

    (b) persons injured;

    (c) claims made or suits brought; or

    (d) insured premises shown in the Declarations or premiums charged.

b. **Coverage F - Medical Payments to Others**

(1) We will pay medical expenses for bodily injury up to the limit stated in the Declarations under "Medical Payments." However, for bodily injury because of the operation or use of a recreational vehicle that is a motorized golf cart we will pay no more than $500. That limit is the amount of coverage and the most we will pay for all medical expenses because of or arising out of bodily injury to any one person in any one occurrence.

(2) The limit of insurance is not increased because of the number of:

    (a) insureds;

    (b) persons injured;

    (c) claims made or suits brought; or

    (d) insured premises shown in the Declarations or premiums charged.

5. **CONDITIONS**

a. **SEVERABILITY**

Except as to our limit of insurance, the coverage provided by SECTION II - PERSONAL LIABILITY PROTECTION applies separately to each insured against whom claim is made or suit is brought.

b. **SUIT AGAINST US**

We may not be sued unless there is full compliance with all the terms of this policy.

We may not be sued under Coverage E - Personal Liability until the obligation of any insured to pay is finally determined either by:

(1) judgement against that person after actual trial; or

(2) written agreement of that person, the claimant and us.

No one shall have any right to make us a party to a suit to determine the liability of any insured.

c. **BANKRUPTCY**

We are not relieved of any obligation under this policy because of the bankruptcy or insolvency of any insured.

d. **OTHER INSURANCE - PERSONAL LIABILITY COVERAGE**

This insurance is excess over any other valid and collectible insurance. However, if the other insurance is specifically written as excess insurance over this policy, the limits of this policy apply first.

# WHAT TO DO IN CASE OF LOSS

1. **PROPERTY**

If a covered loss occurs, the insured must:

a. give us or our agency immediate notice. In case of theft also notify the police and provide

them with a complete inventory of stolen or damaged property. In case of loss under Credit Card, Charge Plate, Fund Transfer Card and Check Forgery Coverage, also notify the issuer of the card or plate or the bank.

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 36 of 78 PageID #: 40

b.  protect the property from further damage or loss; make necessary and reasonable temporary repairs; and keep records of the cost.

c.  make an inventory of all damaged and destroyed property; show in detail quantities, costs, actual cash value and amount of loss claimed; attach to the inventory all available bills, receipts and related documents that substantiate the figures in the inventory.

d.  send to us, within 60 days after the loss, a proof of loss signed and sworn to by the insured, including:

   (1)  the time and cause of loss;

   (2)  the interest of insureds and all others in the property;

   (3)  actual cash value and amount of loss to the property;

   (4)  all encumbrances on the property;

   (5)  other policies covering the loss;

   (6)  changes in the title, use, occupancy or possession of the property;

   (7)  if required, any plans and specifications of any damaged building or fixtures; and

   (8)  the inventory of all damaged or stolen property required by 1.c. above.

e.  exhibit the damaged property to us or our representative as often as may be reasonably required.

f.  submit to statements and examinations under oath while not in the presence of any other insured, and sign the transcripts of the statements and examinations.

g.  provide us with records and documents we require and permit us to make copies.

h.  produce receipts for any increased costs to maintain your standard of living while you reside elsewhere and records pertaining to any loss of rental income.

i.  provide evidence or affadavit(s) supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

j.  make available residence employees, members of your household or others for examination under oath to the extent it is within your power to do so.

2.  PERSONAL LIABILITY PROTECTION

In the event of bodily injury, property damage or personal injury, the insured must:

a.  notify us or our agency as soon as possible. The notice must give:

   (1)  your name and policy number;

   (2)  the time, place and circumstances of the occurrence or incident; and

   (3)  the names and addresses of injured persons and witnesses;

b.  promptly send us any legal papers received relating to any claim or suit;

c.  cooperate with us and assist us in any matter relating to a claim or suit; and

d.  if a loss covered under Damage to Property of Others occurs, send us sworn proof of loss, within 60 days of the occurrence. You shall also exhibit the damaged property if within your control.

An insured will not, except at his or her own cost, voluntarily make any payment, assume any obligation or incur any expenses at the time of the occurrence or incident. Expenses covered by ADDITIONAL COVERAGE, c. First Aid Expenses may be incurred by an insured.

3.  MEDICAL PAYMENTS

When a claim under the Medical Payments To Others coverage is involved, the injured person or someone acting on behalf of the injured person must:

a.  give us, as soon as possible, written proof of claim under oath if required;

b.  submit to physical examinations at our expense by doctors we select, as often as we may reasonably require; and

c.  authorize us to obtain medical and other records.

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 37 of 78 PageID #: 41

# GENERAL POLICY CONDITIONS

## 1.  ASSIGNMENTS

Interest in this policy may not be transferred without our written consent.  If you die, the policy will cover:

a.  any surviving member of your household who was covered under this policy at the time of your death, but only while a resident of the insured premises;

b.  your legal representative while acting in that capacity; and

c.  any person having proper custody of covered property until a legal representative is appointed.

## 2.  CONCEALMENT OR FRAUD

This entire policy is void if, whether before, during or after a loss, any insured has:

a.  intentionally concealed or misrepresented any material fact or circumstance;.

b.  engaged in fraudulent conduct; or

c.  made false statements;

· relating to this insurance.

## 3.  CHANGES

This policy and the Declarations include all the agreements between you and us or our agency relating to this insurance.  No change or waiver may be effected in this policy except by endorsement issued by us.  If a premium adjustment is necessary, we will make the adjustment as of the effective date of the change.

We may adjust your premium during the policy term because of changes in the factors that were used to determine such premium.  These factors include but are not limited to coverages, limits of liability and deductibles, the construction, protection class and protection devices of your dwelling.

Premium adjustments will be made at the time of such changes or when we become aware of the changes, if later.

If we make a change which broadens coverage under this policy without additional premium charge, that change will apply to your insurance as of the date we implement the change in your state.

## 4.  INSPECTIONS

We may, but are not required to, inspect your property and operations.  Our inspection or resulting advice or report does not warrant that your property or operations are safe or healthful or comply with any laws, rules or regulations.

## 5. · OUR RIGHT TO RECOVER PAYMENT

After making payment under this policy, we will have the right to recover to the extent of our payment from anyone held responsible.  This right will not apply under SECTION I - PROPERTY PROTECTION if you have waived it in writing prior to loss.  You will do whatever is required to transfer this right to us.

This condition does not apply under SECTION II - PERSONAL LIABILITY PROTECTION to Medical Payments to Others or Damage to Property of Others.

## 6.  RECOVERIES

This condition applies if we pay for a loss and then lost or damaged property is recovered, or payment is made by those responsible for the loss.

a.  The insured must inform us or we must inform that insured if either recover property or receives payment.

b.  Proper costs incurred by either party are paid first.

c.  The insured may keep the property:  If so, the amount of the claim paid or a lesser amount to which we agree, must be returned to us.

d.  If the claim paid is less than the agreed loss because of a deductible or other limiting terms, the recovery is prorated between the insured and us based on the interest of each in the loss.

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 38 of 78 PageID #: 42

# LIMITATION - FUNGI, WET ROT, DRY ROT AND BACTERIA
### Homeowners Policy - Form 3

It is agreed:

1.  Under DEFINITIONS, the following definitions are added:
    Fungi means any type or form of fungus, including but not limited to, any mold, mildew, mycotoxins, spores, scents or byproducts produced or released by any type or form of fungus.
    Fungi remediation cost means the reasonable cost:
    a.  to remove fungi, wet rot, dry rot or bacteria from covered property under SECTION I - PROPERTY PROTEC-TION;
    b.  to tear out and replace any part of covered property as needed to gain access to the fungi, wet rot, dry rot or bacteria; and
    c.  to test property or air to confirm the presence, level or absence of fungi, wet rot, dry rot or bacteria only if there is reason to believe that fungi, wet rot, dry rot or bacteria is present. We will pay such cost whether performed prior to, during or after removal, repair, restoration or replacement.

2.  Under SECTION I - PROPERTY PROTECTION, 3. EXCLUSIONS, a. Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property, the following exclusion is added:
    Fungi, wet rot, dry rot or bacteria, except as provided under the additional coverage, Fungi, Wet Rot, Dry Rot and Bacteria. This exclusion does not apply:
    a.  to accidental direct physical loss to covered property as a result of fungi, wet rot, dry rot or bacteria if such loss follows prior accidental direct physical loss to covered property caused by fire or lightning; nor
    b.  to ensuing loss not otherwise excluded resulting directly or indirectly from fungi, wet rot, dry rot or bacteria.

3.  SECTION I - PROPERTY PROTECTION, 3. EXCLUSIONS, b. Coverage A - Dwelling and Coverage B - Other Structures is amended as follows:
    a.  (1) is deleted and replaced by the following:
        (1) Weather conditions which contribute in any way with any events excluded in 3.a. above to cause the loss;
    b.  (4)(c) is deleted and replaced by the following:
        (c) rust or other corrosion, or electrolysis;

4.  Under SECTION I - PROPERTY PROTECTION, 4. ADDITIONAL COVERAGES, the following additional coverage is added:
    Fungi, Wet Rot, Dry Rot and Bacteria
    (1) We will pay for accidental direct physical loss to covered property and fungi remediation cost as a result of fungi, wet rot, dry rot or bacteria if such loss follows prior accidental direct physical loss to covered property caused by any peril insured against other than fire or lightning.
    (2) We will pay no more than the least of the following for accidental direct physical loss to covered property including fungi remediation cost.
        a)  subject to (2)b) and (2)c) immediately below, we will pay no more than the limit of insurance shown in the Declarations under "Property Coverage Limitation for Fungi, Wet Rot, Dry Rot and Bacteria" for all accidental direct physical loss to covered property including fungi remediation cost.
        b)  when the Water Backup Of Sewers Or Drains endorsement is part of this policy and fungi, wet rot, dry rot or bacteria follows accidental direct physical loss to covered property resulting directly from water backup, we will pay no more than the limit of insurance shown in the Declarations under "Water Backup of Sewers or Drains" for all accidental direct physical loss to covered property including fungi remediation cost.
        c)  when the HOMEOWNERS PLUS endorsement is part of this policy and fungi, wet rot, dry rot or bacteria follows accidental direct physical loss to covered property resulting directly from water seepage or leak-age, we will pay no more than the limit of insurance shown in the Declarations under "Domestic Appli-ance Seepage or Leakage" for all accidental direct physical loss to covered property including fungi remediation cost.
    This is the most we will pay per location for the total of all loss or costs payable under SECTION I - PROP-ERTY PROTECTION during the policy term shown in the Declarations regardless of the number of locations covered by this policy or the number of losses. This does not apply to Coverage D - Additional Living Ex-

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 39 of 78 PageID #: 43

pense And Loss Of Rents. This amount shall not be increased because of the provisions of the Increased Cost Endorsement or the Guaranteed Home Replacement Cost endorsement, if attached to this policy. This Additional Coverage will not trigger coverage under the Increased Cost Endorsement or the Guaranteed Home Replacement Cost endorsement, if attached to this policy. This is not an additional amount of insurance.

(3) This Additional Coverage applies only to loss or costs resulting from accidental direct physical loss to covered property by a peril we insure against during the policy term only if all reasonable means were used to preserve and save covered property from further damage.

(4) If there is accidental direct physical loss to covered property, not caused, in whole or in part, by fungi, wet rot, dry rot or bacteria, our payment of loss will not be limited by the terms of this coverage, except to the extent that fungi, wet rot, dry rot or bacteria caused an increase in the loss. All such increase will be subject to the provisions of this Additional Coverage.

All other policy terms and conditions apply.

17594 (11-13)                                                                              Page 2 of 2

# PERSONAL PROPERTY REPLACEMENT COST

## Homeowners Policy

It is agreed:

1.  As used in only this endorsement, full cost to replace means the cost, at the time of loss, of a new article:

    a.  identical to the damaged, destroyed or stolen article; or

    b.  of comparable quality when an identical article is no longer available.

2.  We will adjust a claim for covered loss to covered property that:

    a.  is personal property insured under SECTION I - PROPERTY PROTECTION, Coverage C - Personal Property;

    b.  are structures that are not buildings which are located at the residence premises;

    c.  are antennas, carpeting, awnings, domestic appliances and outdoor equipment, whether or not attached to buildings; and

    d.  is personal property separately described and specifically insured by the policy, other than:

        (1)  watercraft, including their equipment, accessories and parts;

        (2)  outboard motors; and

        (3)  recreational vehicles, including their equipment, accessories and parts;

    on the basis of the full cost to repair or the full cost to replace the damaged property without a deduction for depreciation.

3.  The provisions of this endorsement do not apply to:

    a.  antiques, fine arts, paintings and similar property which is rare or an antique and cannot be replaced;

    b.  momentos, souvenirs, collectors items, trading cards and similar property, the age or history of which contributes to its value;

    c.  any item which is:

        (1)  broken or awaiting repair;

        (2)  no longer capable of or will no longer be used to perform the function for which it was designed; or

        (3)  obsolete or useless to the insured.

4.  In no event shall we pay more than the smallest of the following:

    a.  the full cost to replace the article at the time of loss;

    b.  the full cost to repair the article;

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 41 of 78 PageID #: 45

c.   any applicable special limit stated in SECTION I - PROPERTY PROTECTION, Coverage C - Personal Property of the policy; or

d.   the limit of Insurance stated in the Declarations for Coverage C - Personal Property.

5.   If the full cost to replace all damaged covered property under the provisions of this endorsement exceeds $500, we will pay no more than the actual cash value of such property until actual repair or replacement of such property is completed. Actual cash value includes a deduction for depreciation.

6.   An **insured** may choose to disregard the provisions of this endorsement when making a claim under the policy and accept an actual cash value settlement which will include a deduction for depreciation.  If so, that **insured** shall have the right to make a further claim under the terms of this endorsement within 180 days after the loss.

All other policy terms and conditions apply.

17618 (2-96)                                                                                         Page 2 of 2

Tennessee
# POLICY CANCELLATION AND NONRENEWAL
**Homeowners Policy**

It is agreed:

Under **GENERAL POLICY CONDITIONS**, the following conditions are added:

1. **CANCELLATION**

   a. **You** may cancel this policy by returning it to **us** or by giving **us** written notice of the future date at which **you** wish cancellation to take effect.

   b. **We** may cancel this policy by mailing or delivering written notice stating the reason for cancellation to **you** at the address shown in the Declarations. This notice shall be mailed or delivered:

      (1) at least 10 days prior to the effective date when cancellation is for nonpayment of premium; or

      (2) when cancellation is for a reason other than nonpayment of premium:

         (a) at least 10 days prior to the effective date when this policy has been in effect for less than 60 days and is not a renewal; or

         (b) at least 30 days prior to the effective date when this policy has been in effect for 60 days or more, or is a renewal.

   If this policy has been in effect less than 60 days and is not a renewal, **we** may cancel for any reason. If this policy has been in effect for 60 days or more, or is a renewal, **we** may cancel for one or more of the following reasons:

      (1) nonpayment of premium, whether payable directly to **us** or **our** agent or indirectly under any premium finance plan;

      (2) policy obtained by misrepresentation or fraud; or

      (3) substantial change or increased hazard in the risk **we** originally accepted.

2. **NONRENEWAL**

   If **we** decide not to renew this policy, **we** will mail or deliver written notice stating the reason for nonrenewal to **you** at the address shown in the Declarations. This notice shall be mailed or delivered at least 30 days prior to the expiration of this policy.

All other policy terms and conditions apply.

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 43 of 78 PageID #: 47

# ORDINANCE OR LAW ENDORSEMENT
## Homeowners Policy

It is agreed;

1.  Settlement of loss or damage to covered property caused by any PERILS WE INSURE AGAINST shall include costs necessary to meet any applicable ordinance or law:

    a.   regulating the construction, use or repair; or

    b.   requiring the demolition, including costs of debris removal;

    of the insured dwelling or structure(s).

2.  In no event shall we pay more than the smallest of:

    a.   the applicable limit of insurance applying to the damaged covered property; or

    b.   the limit of insurance shown in the Declarations under Ordinance Or Law.

    This is not an additional amount of insurance.

3.  In no event shall our payment under the provisions of this endorsement be increased because of the provisions of any other endorsement attached to this policy that may increase the Coverage A - Dwelling or Coverage B - Other Structures limits of insurance stated in the Declarations.

    All other policy terms and conditions apply.

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 44 of 78 PageID #: 48

# GUARANTEED HOME REPLACEMENT COST
### Homeowners Policy - Form 3

It is agreed:

If, prior to a covered loss to your dwelling, you have:

1. permitted us to increase the Coverage A - Dwelling limit of insurance stated in the Declarations to reflect:

    a.  any increase because of inflation; and

    b.  any property valuation estimates made by us; and

2. notified us of any additions, alterations or improvements to your dwelling which individually or cumulatively increased your dwelling replacement cost by $10,000 or more; and

3. paid an additional premium for any increase in the limit of insurance

then at the time of a covered loss to your dwelling, if you repair or replace your dwelling:

1. the Coverage A - Dwelling limit of insurance stated in the Declarations shall, if necessary, be increased to equal the current replacement cost of your dwelling and shall apply to the cost of repairing or replacing your dwelling at the residence premises; and

2. if the Coverage A - Dwelling limit of insurance stated in the Declarations is increased, then the limit of insurance stated in the Declarations for:

    a.  Coverage B - Other Structures;

    b.  Coverage C - Personal Property; and

    c.  Coverage D - Additional Living Expense and Loss of Rents

    shall be increased by the same percentage that the Coverage A - Dwelling limit of insurance has been increased; and

3. the policy premium shall be increased from the date of loss to the end of the policy term to reflect these increases in the limits of insurance.

If the ORDINANCE OR LAW ENDORSEMENT is attached to this policy, in no event shall our payment under the provisions of that endorsement be increased because of the above provisions.

All other policy terms and conditions apply.

# AMENDATORY ENDORSEMENT - FREEZING EXCLUSION
## Homeowners Policy Forms 3, 4, 6 and
## Premier Plus Homeowners Policy

It is agreed:

**SECTION I - PROPERTY PROTECTION**

Under **EXCLUSIONS:**

1.  The following exclusion is deleted:

    Freezing of plumbing, heating, air conditioning or automatic fire protection sprinkler systems or domestic appliances, or by discharge, leakage or overflow from the system or appliance caused by freezing while the building is vacant, unoccupied or in the course of construction unless, prior to the loss, you have either:

    a.  shut off the water supply and drained the systems and appliances; or

    b.  maintained heat in the building.

2.  The following exclusion is added:

    Freezing of plumbing, heating, air conditioning or automatic fire protection sprinkler systems or domestic appliances, or by discharge, leakage or overflow from the system or appliance caused by freezing while the building is vacant, unoccupied or in the course of construction unless you take precautions to:

    a.  shut off the water supply and drain the systems and appliances; or

    b.  maintain heat in the building.

All other policy terms and conditions apply.

17761 (6-05)                                                                Page 1 of 1

17447 (3-97)

# WATERCRAFT LIABILITY AMENDATORY ENDORSEMENT
## Homeowners Policy

It is agreed:

SECTION II - PERSONAL LIABILITY PROTECTION is amended as follows:

1.   Exclusion a.(6) does not apply with regard to only a jet propelled watercraft less than 16 feet in length not owned by any insured.

2.   Exclusion b.(6) and exclusion c.(3) do not apply with regard to only bodily injury sustained by an insured because of or arising out of the maintenance or use of only a watercraft covered by Coverage E - Liability Coverage.

All other policy terms and conditions apply.

17447 (3-97)                                                                                    Page 1 of 1

17709 (2-96)

## Tennessee
# AMENDATORY ENDORSEMENT
## Homeowners Policy - Form 3 and Form 6

It is agreed:

Under SECTION I - PROPERTY PROTECTION, EXCLUSIONS, exclusion a.(9) is deleted and replaced by the following:

(9)   An action by or at the direction of any insured committed with the intent to cause a loss.  This exclusion does not apply to loss sustained by any insured who does not take part in nor has any knowledge of such action.

All other policy terms and conditions apply.

17709 (2-96)                                                                                    Page 1 of 1

17447 (3-97)

## WATERCRAFT LIABILITY AMENDATORY ENDORSEMENT
### Homeowners Policy

It is agreed:

**SECTION II - PERSONAL LIABILITY PROTECTION** is amended as follows:

1. Exclusion a.(6) does not apply with regard to only a jet propelled watercraft less than 16 feet in length not owned by any insured.

2. Exclusion b.(6) and exclusion c.(3) do not apply with regard to only bodily injury sustained by an insured because of or arising out of the maintenance or use of only a watercraft covered by Coverage E - Liability Coverage.

All other policy terms and conditions apply.

17447 (3-97)                                                                                              Page 1 of 1

17709 (2-96)

### Tennessee
## AMENDATORY ENDORSEMENT
#### Homeowners Policy - Form 3 and Form 6

It is agreed:

Under **SECTION I - PROPERTY PROTECTION, EXCLUSIONS,** exclusion a.(9) is deleted and replaced by the following:

**(9)** An action by or at the direction of any insured committed with the intent to cause a loss. This exclusion does not apply to loss sustained by any insured who does not take part in nor has any knowledge of such action.

All other policy terms and conditions apply.

17709 (2-96)                                                                                              Page 1 of 1

## AMENDMENT OF EXCLUSIONS
### Homeowners Policy Form 3 and Form 6

It is agreed:

Under SECTION I - PROPERTY PROTECTION, 3. EXCLUSIONS, paragraph a.(3) is deleted and replaced by the following.

    (3) Water damage meaning:

        (a) regardless of the cause, flood, surface water, waves, tidal water, storm surge or overflow of a body of water. We do not cover spray from any of these, whether or not driven by the wind;

        (b) water or sewage from outside the plumbing system that enters through sewers or drains;

        (c) water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

        (d) water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building, sidewalk, driveway, swimming pool or other structure.

    This exclusion does not apply to ensuing direct loss to covered property caused by theft, fire or explosion.

All other policy terms and conditions apply.

57006 (3-07)

Page 1 of 1

Agency Code   19-0026-00                                    Policy Number   46-492-884-00

57444 (1-12)

# COVERAGE D - ADDITIONAL LIVING EXPENSE AND LOSS OF RENTS
### Homeowners Policy

It is agreed:

SECTION I - PROPERTY PROTECTION is amended as follows.
Under 1. COVERAGES, Coverage D - Additional Living Expense And Loss Of Rents is deleted and replaced by the following.

**Coverage D - Additional Living Expense And Loss Of Rents**
If a covered loss makes your **residence premises** unfit to live in, we will pay:

(1)  the reasonable increase in your living expenses necessary to maintain your normal standard of living while you live elsewhere.  We will pay for only the shortest time required to repair or replace the **residence premises** or for you to permanently relocate.

(2)  for your loss of normal rents of that part of the **residence premises** where you reside that is either rented by you at the time of covered loss or has been held for rental to others by you during the 12 months preceding the date of loss, less any charges and expenses which do not continue while the **residence premises** is unfit to live in.  We will pay this loss of rents only for the shortest time needed to make the rented part fit to live in.

If damage caused by a peril we insure against occurs at a neighboring premises, we will pay reasonable additional living expenses and loss of rents as provided in (1) and (2) above for up to two weeks provided civil authorities prohibit occupancy of the **residence premises**.  These periods of time will not be shortened by the expiration of this policy.  We will not pay for loss or expense because of the cancellation of any lease or agreement. A deductible amount stated in the Declarations shall apply only once if damage resulting from the same loss is covered under more than one of the coverages described above.

All other policy terms and conditions apply

57444 (1-12)                                                                    Page 1 of 1

Tennessee
## SINKHOLE ENDORSEMENT
Homeowners Policy Form 3

It is agreed:

1. DEFINITIONS are amended by adding the following definitions:
   a. **Engineer** means a person meeting the qualifications of Title 62 - Professions, Businesses and Trades, who has a bachelor's degree or higher in engineering with a specialty in the geotechnical engineering field and possesses geotechnical experience and expertise in the identification of sinkhole activity as well as other potential geologic causes of structural damage.
   b. **Primary structural member** means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.
   c. **Primary structural system** means an assemblage of primary structural members.
   d. **Professional geologist** means a person meeting the qualifications of Geologist Licensure Act of 2007, who has a bachelor's degree or higher in geology or related earth science with expertise in the geology of Tennessee and possesses geological experience and expertise in the identification of sinkhole activity as well as other potential geologic causes of structural damage.
   e. **Sinkhole** means a landform created by subsidence of soil, sediment or rock as underlying strata are dissolved by groundwater which may form by collapse into subterranean voids created by dissolution of limestone or dolostone or by subsidence as these strata are dissolved.
   f. **Sinkhole activity** means settlement or systematic weakening of the earth supporting property only when such settlements or systematic weakening results from contemporaneous movement or raveling of soils, sediments or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.
   g. **Sinkhole loss** means structural damage to the covered building or property, arising out of or caused by, sinkhole activity.
   h. **Structural damage** means covered property has experienced at least (1) of the following:
      (1) Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 - Standard Specification of Tolerances For Concrete Construction and Material, which results in settlement related damage to the interior such that the interior building structures or members become unfit for service or represent a safety hazard; or
      (2) Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 - Building Code Requirements for Structural Concrete, which results in settlement related damage to the primary structural members or primary structural systems that prevents those members or systems from supporting the loads and forces they were designed to support.
2. **SECTION I - PROPERTY PROTECTION** is amended as follows:
   a. Under 1. COVERAGES, the following is added:
      We cover risk of accidental direct physical loss to covered property under Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property caused by a sinkhole loss. Coverage C will apply only if there is structural damage to the building covered under Coverage A or Coverage B caused by sinkhole activity.
   b. EXCLUSIONS is amended as follows:
      Under a, Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property, the following exclusion wherever used in this policy, does not apply to sinkhole loss.
      Earth movement, meaning earthquake, including land shock waves or tremors before, during or after volcanic eruption; landslide; mine subsidence; mudflow; erosion; earth sinking; rising or shifting. This exclusion does not apply to ensuing direct loss caused by fire, explosion, breakage or building glass or safety glazing material or theft.
   c. Under 6. CONDITIONS, the following is added to b. HOW LOSSES ARE SETTLED:
      Upon receipt of a claim for a sinkhole loss under a policy providing sinkhole loss coverage, we will meet the following minimum standards in investigating a claim:

Case 3:16-cv-01967   Document 1-2   Filed 07/28/16   Page 51 of 78 PageID #: 55

(1) We will inspect the residence premises to determine if there has been structural damage to the structure that might be the result of sinkhole activity.

(2) If, upon the investigation pursuant to subdivision (1) immediately above, we confirm structural damage to a covered building consistent with sinkhole activity, or if the structure is located in close proximity to a structure in which sinkhole damage has been verified, then prior to denying a claim, we must obtain a written certification from an engineer, a professional geologist, or other qualified individual stating that the cause of the claim is not sinkhole activity and that the analysis conducted was of sufficient scope to eliminate sinkhole activity as the cause of damage within a reasonable professional probability; and

(3) If, upon the investigation pursuant to subdivision (1) immediately above, we determine that there is no structural damage or no sinkhole loss, we may deny the claim.

(4) If we obtain, pursuant to the investigation mentioned in subdivision (2) immediately above, written certification that the cause of the claim was not sinkhole activity, and if you submitted the sinkhole claim without good faith grounds for submitting such claim, you shall reimburse us for fifty percent (50%) of the cost of the analysis under subdivision (2) immediately above; provided, however, you are not required to reimburse us more than two thousand five hundred dollars ($2,500) with respect to any claim. You are required to pay reimbursement under this subdivision only if we, prior to ordering the analysis pursuant to subdivision (2) immediately above, inform you of your potential liability for reimbursement and give you the opportunity to withdraw the claim.

(5) With respect to a verified sinkhole loss to covered property, the following is added:

   (a) We may limit our total claims payment to the actual cash value of the sinkhole loss to the covered property, which does not include underpinning or grouting or any other repair technique performed below the existing foundation of the structure, until you enter into a contract for the performance of building stabilization or foundation repairs in accordance with the recommendations of the engineer retained or approved by us. Actual cash value includes a deduction for depreciation;

   (b) To be eligible to receive payment for underpinning, grouting, any other repair technique performed below the existing foundation of the building, or any other loss in excess of the actual cash value of the sinkhole loss to the covered property, you must repair such damage or loss in accordance with the repair recommendations of the engineer or engineers retained or approved by us. Actual cash value includes a deduction for depreciation. We may engage a professional structural engineer to make recommendations as to the repair of the structure. The respective findings, opinions and recommendations of our engineer or professional geologist as to the cause of distress to the property and the findings, opinions and recommendations of our engineer as to land and building stabilization and foundation repair shall be presumed correct;

   (c) If our engineer determines that the repair cannot be completed within the policy limits, we must pay to complete the repairs recommended by our engineer or tender the policy limits to you;

   (d) In order to prevent additional damage to the building or structure, you must enter into a contract for the performance of building stabilization and foundation repairs within 90 days after we confirm coverage for the sinkhole loss and notify you of such confirmation;

   (e) After you enter into the contract for the performance of building stabilization and foundation repairs and subject to the terms and conditions of the policy, we shall pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred. We may not require you to advance payment for such repairs. We may make payment directly to the persons selected by you to perform the land and building stabilization and foundation repairs. The decision by us to make payment to such persons does not hold us liable for the work performed;

   (f) You may not accept a rebate from any person performing the repairs specified in this section. If you do receive a rebate, coverage is void and you must refund the amount of the rebate to us. Any person making the repairs specified in this section who offers a rebate commits insurance fraud punishable as a Class E felony;

   (g) The stabilization and all other repairs to the structure and contents must be completed within twelve (12) months after entering into the contract for repairs as set forth in paragraph (5) unless:

      1) There is a mutual agreement between us and you;

      2) The claim is in litigation; or

      3) The claim is under appraisal or mediation; and

   (h) Upon completion of any building stabilization or foundation repairs for a verified sinkhole loss, the engineer responsible for monitoring the repairs shall issue a report to the property owner which specifies what

repairs have been performed and certifies within a reasonable degree of professional probability that such repairs have been properly performed. The **engineer** issuing the report shall file a copy of the report and certification, which includes a legal description of the real property and the name of the property owner, with the county clerk of the court, who shall record the report and certification. This paragraph (5)(h), does not create liability for **us** based on any representation or certification by an **engineer** related to the stabilization or foundation repairs for the verified **sinkhole loss**.

(i) Any claim, including, but not limited to, initial, supplemental and reopened claims under an insurance policy that provides **sinkhole** coverage is barred unless notice of the claim was given to **us** in accordance with the terms of the policy within one (1) year after **you** knew or reasonably should have known about the **sinkhole loss**.

All other policy terms and conditions apply.

57012 (6-14)                                                                    Page 3 of 3

## IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

| | | |
|---|---|---|
| VIOLA SHIPP, | ) | JURY DEMAND |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| AUTO-OWNERS INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S NOTICE OF SERVING PLAINTIFF'S
### FIRST SET OF INTERROGATORIES TO DEFENDANT

COME NOW the Plaintiff, VIOLA SHIPP, (hereinafter referred to as "Plaintiff"), by and through the undersigned counsel, pursuant to Rule 33.01 of the Tennessee Rules of Civil Procedure, and hereby give notice of serving Plaintiff's First Set of Interrogatories to Defendant, AUTO-OWNERS INSURANCE COMPANY, which is required to provide its answers in writing under oath within thirty (30) days from the date of service.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing Interrogatories have

been served contemporaneously with Plaintiff's Complaint.

By:  /s/ Thomas W. Thompson
*Smith, Kling & Thompson, P.A.*
Thomas W. Thompson, Esquire
thompson@ttglaw.com
BPR:  030659
4725 North Lois Avenue
Tampa, Florida 33614-7046
Telephone:     (813) 254-1800
Facsimile:     (813) 254-1844
Attorney for Plaintiff

## INSTRUCTIONS

1. You are instructed either to produce document as they are kept in the usual course of business or to produce document organized and labeled to correspond with the categories in these Interrogatories. Documents are to be produced in full and unexpurgated form.

2. These Interrogatories shall be deemed continuing, if permitted by Rule, so as to require further and supplemental production in the event that the party requested to produced, or any of its attorneys, agents or representatives, obtains or discovers additional information or documents between the time of the initial production and the time of hearing or trial.

3. If any documents covered by these interrogatories are withheld by reason of a claim of privilege, work- product immunity or other ground of non-production, a list is to be furnished at the time that the documents are produced indentifying each such document for which the privilege is claimed specifically by its nature (e.g. letter, memorandum, etc.) together with the following information with respect to any such document withheld: author; recipient; sender; indicated or blind copies; date; subject matter; basis on which the privilege is claimed; number of pages; and the paragraph of these Interrogatories to which such document relates.

4. If a portion of an otherwise responsive document contains information that is subject to a claim of privilege, only those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

5. In the event that any document called for by these Interrogatories has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author; recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

6. All objections to any category of documents to be produced pursuant to theses Interrogatories or to any definition or instruction they contain shall be in writing and delivered to Plaintiff's counsel within the time provided in the Tennessee Rules of Civil Procedure or at such other time as is agreed upon by the parties or ordered by the Court.

7. Where identification of a document is requested, please set forth the identity of its author, or originator, the date of such authorship or origination, the identity of each person to whom the original or copy was addressed or delivered, the identity of each person known or reasonably believed to have present possession, custody, or control thereof, and a brief description of the subject matter thereof.

8. Where identification of a person is requested, please set forth the person's name, last-known home and business address and telephone number, and relation to Defendants, if any.

## DEFINITIONS

A. As used herein, "Defendant," "you" or "your" shall mean Defendant, AUTO-OWNERS INSURANCE COMPANY, its affiliates, partners, agents, servants, employees, attorneys, expert witnesses, accountants, auditors, and all persons or entities over which Defendant has control or have been hired, retained or employed for any purpose by it, whether directly by it or through any other person or entity.

B. The term "Plaintiff" shall mean VIOLA SHIPP, their representatives, agents, servants, employees, attorneys, expert witnesses, accountants, auditors and all persons or entities over whom they have control or have been hired, retained or employed by them to act on their behalf for any purpose whatsoever.

C. The term "person" means any individual, corporation, partnership, joint venture, group, association, body politic, government agency, unit or other organization.

D. The term "identify" or "the identity of" or equivalent language with reference to a natural person shall mean to give his or her entire name, his or her last known residence address, and, if employed, the name and address of his or her employer and his or her job title or position. With reference to a person who is not an individual, such terms mean to state the full name and principal office address of such person.

E. They terms "the identity of" or to "identify" or equivalent language shall with reference to a document mean to:

   1. Describe it in language which would be sufficient to obtain its production if used in a request for production directed to you;

   2. State its customary business description, its nature and substance with sufficient particularity to enable it to be identified, its number (if any), and its date (it any);

   3. And, identify the person(s) who generated it and its current custodians(s).

F. The term "representative" as used herein with regard to a person or entity means and includes each and every present and former director, officer, partner, employee, agent, independent consultant or expert or other person (including attorneys), such as friends, relatives and spouse, acting or purporting to act on behalf of the person or entity.

G. The terms "document" or "documents" is used in its broadest sense and includes, without limitation, drafts, documents whether printed, recorded, stored or reproduced by any mechanical or electronic process, or written or produced by hand, and including computer tapes (including backup tapes) and all other computer-related documents, within your possession, custody or control. "Documents" shall also include (1) each copy that is not identical to the original or to any other copy, and (2) any tangible thing that is called for by or identified in response to any request. "Document" as used herein shall be construed broadly to include all documents and things within the scope of Florida Rule of Civil

Procedure 1.340. Furthermore, " Document" or " documents" shall mean any and all information in tangible form and shall include, without limiting the generality of the foregoing, all writing, letters, telegrams, telexes, teletypes, correspondence, contracts, drafts, agreements, notes to file, reports, pictures, photographs, tapes, memoranda, mechanical and electronic recordings or transcripts of same, blueprints, flow sheets, calendar or diary entries, memoranda of conversations, telephonic or otherwise, memoranda of meetings or conferences, studies, reports, interoffice and intra-office communications, quotations, offers, inquiries, bulletins, circulars, statements, manuals, summaries, newsletters, compilations, maps, charts, graphs, proposition, articles, announcements, newspaper clippings, books, records, tables, book of account, ledgers, vouchers, canceled checks, check stubs, invoices, bills, opinions, certificates, promissory notes and other evidence of indebtedness, and all drafts and copies of documents as hereinabove defined by whatever means made. If multiple copies of any document exist, each copy which is in any way not completely identical to a copy which is referenced shall also be produced.

H.  The term "communication" shall mean any transmission of information by any mean transmission of information by any means, including, without limitation, by spoken language, electronic transmission of data or any other means. The term "communication" shall include, without limitation, any copies of written information received by the person or entity responding to this request, even if such person or entity is not the primary or direct addressee of such written information.

I.  The term "referring" or "relating" shall mean showing, disclosing, averting to, comprising, evidencing, constituting or reviewing.

J.  The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including, with limitation."

K.  All other words have their plain ordinary meaning.

## INTERROGATORIES

1. What is your name, address, telephone number, and if you are answering for someone else, your official position.

2. State the name, official title and function, relationship with Defendant, address and telephone number of each person(s) who assisted in the preparation and formulation of the answers to these Interrogatories, and responses to the Request for Production of documents that accompany these interrogatories, and in the assembly of documents to be produced.

3. List the names and addresses of all persons who are believed or known by you, your agents or attorneys to have any knowledge concerning any of the issues raised by the pleadings in this matter, and specify the subject matter about which the person has knowledge.

4. Identify all policies that Defendant subscribed, issued or sold to Plaintiff.

5. On what date or dates did Defendant provide Plaintiff with any notice of cancellation of a prior policy?

6. On what date or dates did Defendant provide Plaintiff with any notices of non-renewal of a prior policy?

7. State the name, address, telephone number and title of each person(s) who had any role, whatsoever, in working on or adjusting the insurance claim(s) of Plaintiff, **VIOLA SHIPP at 4901Peppertree Dr., Antioch, TN 37013**, giving a brief description of their responsibilities regarding this matter. This interrogatory seeks the name of every employee of **AUTO-OWNERS INSURANCE COMPANY**, who had anything to do with the claim, including the adjusters, branch claims representatives, regional or home office claims committee. State the name(s), address(es), and telephone all documents that support or explain any of these facts.

   A. If any person identified in the answer to the preceding Interrogatory has been promoted, demoted, or transferred during the time relevant herein, describe in detail the change in employment status of each such individual, including the circumstances of the person's employment before and after the change in status.

   B. If any person identified in the answer to the preceding interrogatory is no longer employed with **AUTO-OWNERS INSURANCE COMPANY**, please state the date of separating, and the last-known residence address and telephone number of place of current employment of each such past employee.

8. Are you aware of any other alleged sinkhole activity that has been investigated by you, anyone else on behalf of Defendant, any person, any entity, or any other insurance carrier within a two-block radius of the Plaintiff's property during the past three (3) years? If answering affirmatively, please identify: (i) the address(es) of the area investigated; (ii) the party, including the name and address of the engineer, if you are aware, that conducted the investigation; (iii) whether or not the site contained a confirmed sinkhole; and (iv) whether or not the property was repaired, and if so, the method or repair.

9. Prior to your determination of coverage for Plaintiff's claim for insurance coverage, did you review any prior claims history to determine whether there have ever been any other investigations for sinkhole activity on nearby properties? If answering affirmatively, please identify: (i) the specific areas where the claims were filed; (ii) the engineering company retained by you to conduct the investigation for each such claim; and (iii) whether or not you provided coverage for the claim; and (iv) whether or not the property was repaired, and if so, the method of repair. (The term "nearby properties" is to include any property within a one-mile radius of the Plaintiff's home).

10. State the facts and circumstances upon which you rely for each affirmative defense set forth in your Answer and Affirmative Defenses.

11. Do you contend that anything other than a covered peril under the subject homeowners' policy is, or may be, the cause, in whole or in part, of damage to the insureds' premises, for which claims have been asserted against you in this lawsuit? If so, state the legal basis for your contention, the facts or evidence upon which your contention is based, and whether or not previously notified Plaintiff of your contention.

12. Have you ever heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, concerning any issue in this lawsuit? If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place, and substance of each statement.

13. State the name and address of every person known to you, your agents, or your attorneys who has knowledge about, or possession, custody, or control of, any model, plat, map, drawing, motion picture, video-tape, or photograph pertaining to any fact or issue involved in this controversy; and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

14. For each claim for insurance benefits submitted to you by Plaintiff during the past four (4) years, please state: (i) the date Plaintiff first reported the loss to you; (ii) the "date of loss" or date associated with the claim; (iii) whether the claim was denied; (iv) if any payment was tendered or offered, the amount and date of such payment or offer; and (v) the policy number, coverage limits and policy period of any insurance policy in effect at the time the claim was submitted.

15. Describe comprehensively and in detail each and every way you believe that Plaintiff have violated and/or failed to comply with any terms or conditions of the insurance policy, including but not limited to, cooperate with **AUTO-OWNERS INSURANCE COMPANY's** investigation and adjustment of the loss, intentional concealment, omitted and/or misrepresented any material facts or circumstances. State then name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

16. Describe comprehensively and in detail the exact nature of all evidence in your possession, which may support any and all allegations of Plaintiff's Complaint, or that may rebut any and all allegations of Plaintiff's Complaint with respect to this pending action, and which are discoverable under the applicable Rules of Civil Procedure. State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

17.  Describe each file that was opened, created, or maintained by **AUTO-OWNERS INSURANCE COMPANY** relating in any way to the policy or the claim, including the complete name or title of the file, its complete file number or other identifying designation, its present custodian and physical location within **AUTO-OWNERS INSURANCE COMPANY** and its general purpose or business classification. This interrogatory seeks the identification of each "claims file" and each "underwriting file" under whatever designation or description, and every copy of duplicate thereof which may exist within **AUTO-OWNERS INSURANCE COMPANY**. State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

18.  State with specificity, when and why did **AUTO-OWNERS INSURANCE COMPANY** anticipate litigation with regard to a breach of contract cause of action in the case at issue. State the name(s), addresses(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

19.  For the past three (3) years, state the total number of times you, your company, your agents, third party-claims companies retained by Defendant, or your attorney have retained the services of the expert(s) retained in the present case and please state the total amount of compensation paid to the expert(s) during the past three (3) years.

20. If any Requests for Admissions in Plaintiff's First Request for Admissions served contemporaneously with these interrogatories have been in whole or in part denied, or if anything other than an outright admission was given, please explain the facts supporting said response. Please identify any person with knowledge regarding the reasons for said response and identify any document supporting said response.

21. For each allegation of the Complaint which you have denied, please state the factual basis for each denial and list the name and address of the person and identify any documents supporting the facts of the denial.

22. For each year during the five year period beginning in the fifth year preceding the date on which this complaint was filed, state:

a. The number of sinkhole claims in the State of Tennessee opened for property damage under residential property insurance policies issued by the defendant, regardless of whether such claims resulted in payment or whether such claims are currently open.

b. The number of property damage claims in the State of Tennessee opened under residential property insurance policies for damage by a peril other than sinkhole, regardless of whether such claims resulted in payment or whether such claims are currently open.

23. Please list all adjusters, managers, supervisors or directors that have adjusted, examined, or handled sinkhole claims for **AUTO-OWNERS INSURANCE COMPANY** in the last five (5) years. For each, list his/her current contact information and insurance adjuster's license number.

24. Of those identified in the preceding interrogatory, has anyone ever had their license suspended or revoked or been subject to any disciplinary proceedings by any insurance regulatory body. If so, list the insurance license number of the individual, the circumstances surrounding the proceeding, the outcome of the proceeding, the date of the occurrence, and any and all relevant information pertaining to the disciplinary action.

## AUTO-OWNERS INSURANCE COMPANY

By: _____

**STATE OF TENNESSEE**

**COUNTY OF** _____

The foregoing instrument was acknowledged before me this____ day of_____

_____, 2016, by _____who is personally known to me or who has

produced _____as identification and who did (did not) take an oath, and who

says the he/she executed the foregoing Answers to Interrogatories and that the Answers are true

and correct to the best of his/ her knowledge and belief.

_____
Notary Public (seal)

_____
Printed Name

## IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

| | | |
|---|---|---|
| VIOLA SHIPP, | ) | JURY DEMAND |
| Plaintiff, | ) ) | Case No. |
| | ) | |
| v. | ) ) | |
| AUTO-OWNERS INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT

COME NOW the Plaintiff, **VIOLA SHIPP** (hereinafter referred to as "Plaintiff"), by and through the undersigned counsel, and pursuant to Rule 34.01 of the Tennessee Rules of Civil Procedure, hereby request that Defendant, **AUTO-OWNERS INSURANCE COMPANY,** produce for inspection, copying or photographing at the office of Thompson Trial Group, P.A., 4725 N. Lois Avenue, Tampa, Florida 33614 within thirty (30) days from the date of service, or at such other time and place as may be agreed upon between counsel, all documents and things in the possession, custody or control of Defendant, which are responsive to the requests contained in the numbered paragraphs below:

## I. DEFINITIONS AND INSTRUCTIONS

A. As used herein, "Defendant", "you" or "your" shall mean Defendant, **AUTO-OWNERS INSURANCE COMPANY,** its affiliates, partners, agents, servants, employees, attorneys, expert witnesses, accountants, auditors, and all persons or entities over which Defendant has control or have been hired, retained or employed for any purpose by it, whether directly by it or through any other person or entity.

B.    As used herein, the term "document" or "documents" shall be defined to include any and all documents, memoranda (including written memoranda of telephone conversations, oral communications, discussions, agreements, acts or activities), letters, postcards, telegrams, messages (including telephone messages), facsimiles, intra-and interoffice communications, correspondence, handwritten and/or typewritten notes, pamphlets , diaries, records of any kind, sound recordings, contracts, agreements, books, letters, reports, catalogues, financial statements, receipts, invoices, billing statements (including credit card and telephone statements), purchase orders, proposals, affidavits, advertisements, solicitations, indices, data processing cards, other data processing materials, data, maps, directives, desk pads, calendars, scrap books, notebooks, drawings, diagrams, sketches, statistical records, appointment books, diaries, computer printouts, data processing input and output, computer input and output, e-mail, microfilms, other records kept by electronic, photographic or mechanical means, and writing of every kind and character, including preliminary drafts and other copies of the foregoing, however, produced or reproduced. If multiple copies of a document exist, each copy which is any way not completely identical to a copy which is being produced should also be produced.

C.    As employed herein, "all documents" shall refer to and shall include every document as above-defined, known to you and every such document or thing that can be located or discovered by reasonable diligent efforts, whether or not originally in your custody, possession or control.

D.    When producing the requested documents and things, please produce same as they are kept in the usual course or business or label them to correspondence with the categories of this request for production.

2

E.    If you claim a privilege as to any documents or thing encompassed by this request for production, you are requested to make the claim expressly and describe the nature of the documents, communications or things not produced or disclosed in manner that without revealing information itself protection claimed.

F.    The words "relating to" mean concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, tending to establish, tending not to establish, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

## II.    **DOCUMENTS TO BE PRODUCED**

1.    All reports, drafts, charts, drawings, diagrams, or memoranda showing or intending to show the cause of damage to Plaintiff's real property located at **4901 Peppertree Dr., Antioch, TN 37013,** (hereinafter referred to as the "Property") or the potential methods of repair in connection therewith.

1.    A certified copy of the Plaintiff's all-risk insurance policy that was in effect at the time Plaintiff's claim was made.

2.    All applications for insurance or corresponding documents that relate to Plaintiff's procurement of the subject policy.

3.    The entire underwriting file.

4.    All notices of cancellation for any policy issued to Plaintiff by Defendant.

5.    All notices of non-renewal for any policy issued to Plaintiff by Defendant.

6.    All field logs, notes, or other memoranda relating to or referencing any engineering or geological consultant's findings or recommendations in connection with the Plaintiff's Property.

3

7.     All documents relating to or referencing the damage to Plaintiff's Property, which were considered by any individual or entity, and any related cost estimates in connection therewith.

8.     All photographs, logs, and/or videos taken of the Plaintiff's Property with regard to any inspection or testing performed at the request of Defendant or at the request of any of Defendant's representatives.

9.     All documents relating to or referencing any communication between Plaintiff and Defendant, including, but not limited to, correspondence or notices in connection with Plaintiff's claim.

10.    All documents signed by Plaintiff and relating to this action.

11.    Any documents, notes, memoranda, diaries, reports, photographs, video, etc., of any person who visited the Property and/or spoke with Plaintiff on behalf of Defendant, at the request of Defendant, or at the request of any Defendant's representatives.

12.    All documents used by you in making the decision to tender or to offer to tender any amount to Plaintiff in connection with Plaintiff's claim.

13.    All documents used by you in making the decision whether coverage would be provided with respect to Plaintiff's claim.

14.    All documents used by you in making the decision to elect to repair or repair the Plaintiff's Property in connection with Plaintiff's claim.

15.    All reports, memoranda, or other documents regarding the existence of any alleged sinkhole activity investigated by Defendant or their representatives within a two block radius of the Property.

16.    All reports, memoranda, or other documents relating to any ground remediation or repair work, regardless of whether such repairs were ever performed, arising out of alleged sinkhole activity at any neighboring properties within a one-mile radius of the subject Property.

17.    All documents, including, but not limited to, prior claims documentation submitted to you by other insureds, which were consulted to assist you in determining whether there have been any other investigations for sinkhole activity at neighboring properties within a two-mile radius of the subject Property.

18.    All documents provided to Defendant's geological or engineering experts to assist them in their investigation of this claim.

4

19.     All statements, forms, recordings, tapes, or transcripts of recordings of statements made by Plaintiff with regard to this claim.

20.     All documents which support, refute, or otherwise relate to Defendant's claims or defenses in this action.

21.     All documents relating to or referencing any communication by Defendant, to any testing laboratory, consultant, engineer or engineering firm, geologist or geological firm, building contractor, or any expert, including but not limited to, correspondence, memoranda and notes prepared in connection with this claim.

22.     All documents for any construction/repair estimates or construction/repair proposals regarding the Plaintiff's Property.

23.     All documents including IRS documents, computer printouts, or notes, indicating the total number of times that any of the expert/s retained by you, your company, your third-party claims company, or your attorney in relation to Plaintiff's sinkhole claim or any expert(s) on Defendant's behalf that has examined, visited, performed any work or any testing of any kind on Plaintiff's property, have been retained by you, your company, your third-party claims company, or your attorney in the past three years and the total amount of compensation paid to said expert(s) for work in the past three (3) years.

24.     All claims file documents regarding Plaintiff's claim generated prior to determination regarding Plaintiff's claim.

25.     All documents evidencing the reserve amount set aside for Plaintiff's claim.

26.     All documents identified or referred to in Plaintiff's First Set of Interrogatories.

27.     All documents that relate to the interpretation or application of the subject language at issue in Plaintiff's claim.

28.     All documents relating to your past and present document destruction policies.

29.     All documents relating to premiums that Plaintiff paid you for policies issued.

30.     All documents relating to Plaintiff or Plaintiff's property, which you obtained from any source other than Plaintiff.

31.     All claims manuals for adjustment of sinkhole claims, in both printed and electronic format. The claims manual must be produced in its entirety including, but in no way limited to those sections providing for:

5

a. Property loss handling procedures.
b. Supervisors and managers manuals.
c. Data processing and system manuals, including both intranet and e-mail methods.
d. Historical copies, out of date copies, and previous editions, kept on hand, and any procedures relating to the retention of claims manuals and the procedures for updating claims manuals.

32. Documents, manuals, and reports relating to any programs to control sinkhole claim costs, including indemnity and allocated/unallocated claim costs.

33. Training materials in every format, including videotapes, recordings, and written materials for:

a. Property loss adjusting.

b. Sinkhole loss adjusting.

c. Disputed claims.

d. The hiring, supervision and management of outside experts or investigators.

e. Coverage interpretation.

f. Estimating, or any aspect of estimating, including determination of property values, repair of property, reconstruction of property, and cost estimating.

34. Employee handbooks including:

a. Orientation manuals or booklets.

b. Benefits and disability plans.

c. Profit sharing, stock ownership, and incentive plans.

d. Company philosophies, policies and mission statements.

e. Sinkhole adjustment handbooks.

35. Records and copies of all public complaints against Defendant.

36. All claims files relating to any bad faith litigation against Defendant in the State of Tennessee within the past thirty-six (36) months.

6

37.    All forms, publications, and manuals related specifically to the claims staff and personnel.

38.    All guides for letter writing and correspondence, including any index of form letters and any e-mail programs or manuals.

39.    Company "newsletters" regarding sinkhole claims whether in paper or electronic format, including:

    a.    Company-wide newsletters.

    b.    Regional and local newsletters.

    c.    Video-conferences and video magazines.

    d.    Newsletters directed specifically to claims.

    e.    Newsletters directed to sales or agent distribution.

40.    Copies of any and all loss control, engineering, or risk inspection services rendered for the risk for a property which underlies this litigation.

41.    A copy of all agency manuals concerning sinkhole claims, including, but in no way limited to:

    a.    Instructions to agents for claims handling, communications, handling of complaints and disputed claims, and handling of insurance premiums.

    b.    Training for the sale of insurance policies on behalf of Defendant.

42.    Procedures, policies and instructions for any "claim committee," including, with regard to the specific sinkhole claim which underlies this litigation:

    a.    The names of any and all committee members who have met, at any time, with regard to the claim which underlies this litigation.

    b.    The reports issued by any claim committee.

    c.    Documentation, including contemporaneous notes, of any "claim committee" deliberations.

44.    Identification of all corporate liability insurance for errors in omission or bad faith,

7

including:

    a.    Copies of all such insurance policies.

    b.    Any reports and/or correspondence to or from such insurers with regard to this action.

    c.    Any report and/or correspondence to or from such liability insurers, whether or not related to this claim.

    d.    Copies of all investigation and adjustment files relating to this litigation.

    e.    Copies of all investigation and adjustment files whether or not related to this litigation.

45.    Any and all profit statements for the last five years.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY a true and correct copy of the foregoing Request for Production has been served contemporaneously with the Complaint and Responses to same are due within thirty (30) days from the date of service.

By:   /s/ Thomas W. Thompson
*Smith, Kling & Thompson, P.A.*
Thomas W. Thompson, Esquire
thompson@ttglaw.com
BPR: 030659
4725 North Lois Avenue
Tampa, Florida 33614-7046
Telephone:    (813) 254-1800
Facsimile:    (813) 254-1844
Attorney for Plaintiff

8

# IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| VIOLA SHIPP, | ) **JURY DEMAND** |
| | ) |
| Plaintiff, | ) **Case No.** |
| | ) |
| v. | ) |
| | ) |
| AUTO-OWNERS INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT

COME NOW the Plaintiff, **VIOLA SHIPP**, (hereinafter referred to as "Plaintiff"), by and through the undersigned counsel, and pursuant to Rule 36.01 of the Tennessee Rules of Civil Procedure, hereby request Defendant, **AUTO-OWNERS INSURANCE COMPANY**, ("Defendant"), respond to Plaintiff's First Request for Admissions to Defendant within forty-five (45) days of the date of service and admit or deny the following:

1. That all times material hereto, Plaintiff was and is the owner of that certain real property located at **4901 Peppertree Dr., Antioch, TN 37013**, (hereinafter referred to as "Insured Property").

2. That Defendant issued or renewed a policy of homeowner's insurance, (hereinafter referred to as the "Policy") to Plaintiff on the Insured Property.

3. That at all times material hereto, the subject Policy of homeowners' insurance was/is in effect for the Insured Property.

4. That the above-referenced Policy of insurance covers any and all damage to the Insured Property that was caused by sinkhole activity.

5. That the Policy is an all-risk policy.

6. That there is damage to the structure located at the Insured Property.

7. That Plaintiff made a timely application for insurance benefits under the Policy of homeowners' insurance.

8. That Defendant has not sent to Plaintiff a notice of nonrenewal before this claim was initiated.

9. That Defendant has not sent to Plaintiff a notice of cancellation before this claim was initiated.

10. That Plaintiff first reported damage to the home on or about **June 2, 2015**, while the above-referenced Policy was in effect.

11. That Defendant unilaterally retained **Rimkus Consulting Group, Inc.**, (hereinafter **"Rimkus"**) to determine if a probable geotechnical cause of the distress at the Insured Property could be determined and, if so, to make repair recommendations.

12. That **Rimkus** determined that the damage to the Insured Property was caused by sinkhole activity.

13. That **Rimkus** inspection of the Plaintiff's Property was inconsistent with sinkhole testing standards.

14. That Defendant failed to consult with Plaintiff in its retention of **Rimkus** to perform the subsidence investigation.

15. That Defendant relied upon **Rimkus'** reports and the recommendations contained therein to deny Plaintiff's claim.

16. That Defendant relied upon the above-referenced reports of **Rimkus**, and the recommendations contained therein, in refusing to pay all benefits owed under the policy and related to Plaintiff's claim.

17. That the duty to ensure a subsidence investigation compliant with Tennessee Statute § 56-7-130 7 lies with Defendant.

18. That Plaintiff has complied with all conditions precedent to obtaining benefits under Plaintiff's Policy of homeowner's insurance from Defendant.

19. That Plaintiff has complied with all conditions precedent to the maintenance of this action.

2

33. That Defendant's initial claim investigation did not meet the minimum standards in investigating a claim required by Tennessee Statute § 56-7-130.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** a true and correct copy of the foregoing Request for Admissions has been served contemporaneously with Plaintiff's Complaint and Responses to same are due within forty-five (45) days from the date of service.

By:   /s/ Thomas W. Thompson
*Smith, Kling & Thompson, P.A.*
Thomas W. Thompson, Esquire
thompson@ttglaw.com
BPR: 030659
4725 North Lois Avenue
Tampa, Florida 33614-7046
Telephone:    (813) 254-1800
Facsimile:    (813) 254-1844
Attorney for Plaintiff

4